# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JENNIFER LEA HEAVLIN,

Defendant-Appellant.

UNPUBLISHED
January 3, 2019

No. 337758
Wayne Circuit Court
LC No. 15-003247-01-FH

Before: MURRAY, C.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right her jury trial convictions of operating while intoxicated (OWI) causing death, MCL 257.625(4), and leaving the scene of a motor-vehicle accident causing death, MCL 257.617(3). The trial court sentenced defendant to concurrent terms of 7 to 15 years' imprisonment for her convictions. We affirm but remand for correction of the presentence investigation report (PSIR) consistent with this opinion.

## I. BACKGROUND

This case arises out of a motor-vehicle accident in the early hours of November 8, 2014, which caused the death of Michelle Smith. Smith was in the front-passenger seat of a vehicle driven by her boyfriend, Mark Pagan.[1] A vehicle owned by defendant was traveling in the opposite direction. As Pagan was making a left turn, the front-passenger corner of defendant's vehicle struck the front-passenger side of Pagan's vehicle, causing Smith's death. Inspector James Pouliot, head of the "Downriver Crash Response Team," determined that both drivers were at-fault in the accident. Pagan made an improper left-hand turn by "cutting it sharp" instead of making a 90-degree turn at the intersection. Officer Aaron Biniarz, another member of the Crash Response Team, determined that at the time of impact defendant's vehicle was traveling 34 miles per hour in a 25 miles-per-hour zone. According to Pouliot, if defendant's vehicle was traveling the speed limit, the collision "probably" would not have occurred. Similarly, if Pagan made a proper left turn, the accident would not have occurred because defendant's vehicle "would have already passed" the intersection.

---

[1] Pagan's cousin, Joseph Yates, was also in the vehicle.

-1-

The primary question raised by the defense at trial was whether defendant was the driver of her vehicle at the time of the accident. Brian Tarcia testified that he came upon the accident and exited his vehicle to see if he could offer help. Tarcia observed defendant exiting her vehicle through the driver-side door.[2] Tarcia said that defendant told him that she had called an ambulance and that he should leave. Tarcia then heard people from the other vehicle yelling for help, and he called 911. Tarcia said that defendant offered him money for a ride and tried to enter his vehicle. After Tarcia directed her away from his vehicle, defendant "took off running." Based on descriptions obtained from witnesses at the scene, law enforcement found defendant at a nearby gas station. Defendant denied that she had been drinking and that she was involved in an accident. She was taken to the hospital, where she submitted to a blood test. The results were 0.192 grams of alcohol per 100 milliliters of blood, more than twice the legal limit.

In an interview with law enforcement the next day, defendant admitted to being in her vehicle at the time of the accident but denied that she was the driver. About a year after the accident, defendant identified Bradley Williamson as the driver. Williamson testified that on the night of accident he drove defendant in her vehicle to a friend's house. However, he said that defendant left the house without him and he denied being the driver of the vehicle. Williamson willingly provided a DNA sample.

DNA evidence was recovered from defendant's vehicle's airbags. Jennifer Jones, a forensic biologist for the Michigan State Police, found that defendant's DNA matched the major donor to the driver-side airbag. Both airbags contained minor donor DNA profiles, but Jones was unable to make any conclusions regarding those profiles. Defendant presented the testimony of a DNA expert, Mark Perlin, who used probabilistic genotyping technology to analyze the DNA collected from the airbags.[3] Using this technology, Perlin found "strong" statistical evidence that both defendant's and Williamson's DNA were present in the mixture obtained from the driver-side airbag. Perlin estimated that 85% of the DNA corresponded to defendant and 15% corresponded to Williamson. As for the passenger-side airbag, Perlin found statistical support that defendant's DNA was present on the airbag but "no support and some exclusionary support" that Williamson's DNA was part of the mixture obtained from that airbag. Perlin estimated that "[r]oughly 40 percent" of the DNA found on the passenger-side airbag was attributable to defendant.

Closing arguments focused in large part on the interpretation of DNA evidence. The jury heard testimony about two types of DNA transfers, direct and secondary. A direct transfer is when a person transfers his or her DNA directly to an object. A secondary transfer occurs when that DNA is then transferred to a different object. The prosecutor argued that, even if the jury accepted Perlin's conclusions, it did not mean that Williamson was driving at the time of the

---

[2] It was undisputed that the front-passenger door to defendant's vehicle was stuck shut and that defendant would have exited through the driver-side door even if she was a passenger in the vehicle.

[3] The state did not yet have their probabilistic genotyping software "online" when it analyzed the DNA evidence in this case.

accident. The prosecutor stated that it was more likely that Williamson's DNA was transferred to the driver-side airbag through a secondary transfer, via the prior occasions that he was in defendant's vehicle. The defense explained that defendant's DNA was on the driver-side airbag because, as a passenger in the vehicle, she crawled over the driver's seat, thereby wiping her face on the airbag.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that trial counsel was ineffective for failing to call Noami Gonzalez as a witness. Reviewing the present record, we disagree, as it appears that there were strategic reasons for not calling Gonzalez. Defendant provides an offer of proof suggesting that counsel was not acting strategically, but we decline to remand for a *Ginther*[4] hearing because defendant does not demonstrate a reasonable probability that Gonzalez's testimony would have resulted in a different outcome.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. Because the trial court did not conduct an evidentiary hearing on defendant's claims of ineffective assistance of counsel, our review is limited to mistakes apparent on the record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). A defense counsel's performance was deficient if "it fell below an objective standard of reasonableness under prevailing professional norms." *Id*. To show prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

At the preliminary examination, Gonzalez testified that she came upon the crash scene and saw someone leaving defendant's vehicle with "a jacket and a hood on." Gonzalez said she did not see the person's face, nor could she identify the person's gender. This testimony is arguably favorable to the defense's theory that Williamson was the driver of the vehicle. However, upon closer examination, Gonzalez's testimony is not consistent with that theory. Gonzalez testified that she saw only one person leave defendant's vehicle and did not see anyone else in the vehicle. Yet, according to the defense, Williamson would have been the first person

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

to leave the vehicle, followed by defendant, as the passenger door was stuck shut. So, viewed in context, Gonzalez's testimony offers little, if any, support for the defense theory. Rather, her testimony was consistent with the prosecution's theory that there was only one person in defendant's vehicle at the time of the accident.

Further, Gonzalez's description of the person leaving defendant's vehicle was consistent with other witness's descriptions. Again, Gonzalez said that the person exiting defendant's vehicle was wearing a jacket with a "hood on." Other witnesses told law enforcement that the person fleeing the crash scene was wearing a plaid jacket. Further, Gonzalez said that the person she saw left the crash scene on Porter Ave., which was consistent with the witnesses who testified at trial that defendant traveled in that direction. Gonzalez also testified that the person she saw was "a little bit" taller than her, which accurately describes defendant's height. Moreover, an officer testified that when defendant was brought back to crash scene, Gonzalez identified defendant as "the person that fled from the scene."[5] Thus, had Gonzalez testified at trial, she could have been impeached with her police statement.

In sum, Gonzalez's preliminary examination testimony was somewhat favorable to defendant because she could not identify the gender of the person leaving the car. However, she saw only one person, which was inconsistent with defendant's theory. In addition, Gonzalez provided no evidence affirmatively supporting the defense. Further, there is evidence that on the date of the incident she had identified defendant as the person fleeing the scene. One may argue with counsel's decision not to call Gonzalez as a witness, but the decision, when viewed solely on the basis of the present record, had a strategic basis.

In support of her motion to remand to the trial court for an evidentiary hearing, defendant provides an offer of proof that trial counsel wanted to call Gonzalez as a witness but lost her contact information and failed to reobtain it.[6] Assuming that this is true, counsel's actions were not objectively reasonable. However, for the reasons discussed, we conclude that Gonzalez did not offer defendant a substantial defense, i.e., "one that could have affected the outcome of the trial," *Putnam*, 309 Mich App at 248, and therefore defendant was not prejudiced by the alleged error. Further, we note that, on appeal, the prosecutor provides Gonzalez's handwritten statement to the police in which she identifies defendant as the person she saw leaving the vehicle. Accordingly, we decline to remand to the trial court for further factual development. MCR 7.211(C)(1)(a)(ii).

---

[5] There was no objection to the officer's recounting of Gonzalez's statement.

[6] Although a party may not expand the record on appeal, *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999), defendant was required to submit an "affidavit or offer of proof regarding the facts to be established at a hearing" in support of her motion to remand. MCR 7.211(C)(1). It is appropriate for this Court to consider an offer of proof in deciding whether to remand for a *Ginther* hearing. See *People v Traver*, 316 Mich App 588, 602; 894 NW2d 89 (2016), rev'd in part on other grounds 502 Mich 23 (2018).

-4-

Defendant, in her Standard 4 brief, also argues that trial counsel was ineffective for failing to retain an accident reconstruction expert. An attorney's decision on whether to call an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The record does not reveal whether trial counsel consulted an accident reconstruction expert. We note that trial counsel's cross-examination of the prosecution's accident reconstruction witnesses was very limited. However, while it is possible that a different expert would have reached different conclusions, e.g., that defendant was traveling less than 34 miles per hour, defendant does not present an offer of proof as to the expected testimony of a defense accident reconstruction expert. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018). Thus, even assuming that trial counsel erred by not retaining an expert witness, defendant fails to establish that she was prejudiced by that error.

## III. JURY INSTRUCTIONS

Defendant argues that the trial court plainly erred by not instructing the jury on contributory negligence in accordance with M Crim JI 16.20. We disagree.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). We review "jury instructions as a whole to determine whether there is error requiring reversal." *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998). However, defendant did not raise this issue below and therefore our review is for plain error affecting substantial rights. *People v Jackson*, 313 Mich App 409, 421; 884 NW2d 297 (2015). The defendant must establish that the alleged error more likely than not affected the outcome of the lower court proceedings. *People v Houthoofd*, 487 Mich 568, 590; 790 NW2d 315 (2010). "Even if somewhat imperfect, instructions do not warrant reversal if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

MCL 257.625(4) provides that "[a] person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes the death of another person is guilty of a crime as follows[.]" "In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause." *People v Schaefer*, 473 Mich 418, 435; 703 NW2d 774 (2005). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *People v Feezel*, 486 Mich 184, 194-195; 783 NW2d 67 (2010). "For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a direct and natural result of the defendant's actions, and an intervening cause must not sever the causal link." *People v Laidler*, 491 Mich 339, 346 n 2; 817 NW2d 517 (2012) (quotation marks and citation omitted).

In this case, the jury was instructed that it was required to find that defendant was both a factual and proximate cause of Smith's death and was given accurate definitions of those terms. The jury was also instructed in accordance with M Crim JI 16.15:

> There may be more than one cause of death. It is not enough that the defendant's act made it possible for the death to occur. In order to find that the death of Michelle Smith was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural or necessary result of defendant's acts.

Defendant argues that the trial court erred in failing to also give the jury M Crim JI 16.20, which provides:

> If you find that [*named deceased*] was negligent, you may only consider that negligence in deciding whether the defendant's conduct was a substantial cause of the accident.

This instruction is based on the decision in *People v Tims*, 449 Mich 83, 97-99; 534 NW2d 675 (1995), which reaffirmed that negligence on the part of the decedent is not an affirmative defense, but that a jury may consider the decedent's negligence in determining whether the defendant's actions were a proximate cause of death. Defendant's argument that the trial court could have given a modified version of this instruction, i.e., with reference to the negligence of the other driver, has some merit. However, M Crim JI 16.15 accurately explains the proximate cause standard and it was not plain error not to give M Crim JI 16.20. No error results from the omission of an instruction if the instructions as a whole covered the substance of the omitted instruction. *Kurr*, 253 Mich App at 327.[7]

Even if M Crim JI 16.20 (or some variation thereof) should have been presented to the jury, it is not more probable than not that the instruction would have led to a different outcome. "[T]he contributory negligence of a decedent will not exonerate a defendant of criminal responsibility, where the defendant's negligence is a proximate cause of the decedent's death." *People v Bailey*, 451 Mich 657, 678; 549 NW2d 325 (1996) (citation omitted). There was substantial evidence presented to the jury from which it could find that defendant was a proximate cause of the victim's death. Defendant was highly intoxicated and driving 10 miles per hour over the speed limit around 3.00 a.m. She had a BAC of .192, over twice the legal limit. When officers found defendant at the gas station, she was "staggering, unbalanced." Officers declined to perform a field sobriety test because it was apparent that defendant was intoxicated and that it would have been unsafe to perform those tests. Officer Biniarz testified that there was no evidence of "any pre-impact braking," which allowed the jury to infer that defendant was so intoxicated that she made no effort to avoid the collision. Thus, substantial evidence supported the conclusion that a death arising from a motor-vehicle accident was a direct and natural result of defendant's actions.

Defendant also suggests that the court should have instructed the jury that a defendant is not a proximate cause of the accident if there was an intervening, superseding cause. As the Supreme Court stated in *Feezel*:

---

[7] For the same reasons, we reject defendant's alternative argument that trial counsel was ineffective for not requesting the instruction.

Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. [*Schaefer*, 473 Mich at 437]. Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation. *Id.* at 436-437. In contrast, "gross negligence" or "intentional misconduct" on the part of a victim is considered sufficient to "break the causal chain between the defendant and the victim" because it is not reasonably foreseeable. *Id.* Gross negligence, however, is more than an enhanced version of ordinary negligence. *Id.* at 438. "It means wantonness and disregard of the consequences which may ensue . . . ." *People v Barnes,* 182 Mich 179, 198; 148 NW 400 (1914). "Wantonness" is defined as "[c]onduct indicating that the actor is aware of the risks but indifferent to the results" and usually "suggests a greater degree of culpability than recklessness . . . ." Black's Law Dictionary (8th ed). [*Feezel*, 486 Mich at 195-196.]

Thus, in order for a jury to have found Pagan's actions to be a superseding intervening cause they would have needed to conclude that his conduct constituted gross negligence. Pagan had a BAC of .08, just over the legal limit. MCL 257.625(1)(b). The Supreme Court has declined to decide "[w]hether, in a multiple vehicle accident, a victim-driver's intoxication raises a presumption of gross negligence . . . ." *Feezel*, 486 Mich at 196 n 5. Defendant also points out that Pagan made an improper left turn even though he could see headlights of an oncoming vehicle "coming towards [him] from behind the train tracks," or, as one officer put it, "a little over the length of a yard of a house." Defendant argues this was grossly negligent because Pagan saw the danger of executing a turn when he could see approaching traffic. However, Pagan's testimony indicates that his error was in underestimating how fast defendant's vehicle was traveling, an explanation that is certainly consistent with the fact that defendant was speeding. Moreover, Pagan was traveling at a safe speed and a reasonable jury could not conclude that an action as common as cutting a turn short constitutes gross negligence rather than ordinary negligence. Pagan's turn was not so unforeseeable that defendant should not be considered the proximate cause of the victim's death, especially considering that defendant was so intoxicated that she made no effort to avoid the crash.[8] For those reasons, even if the trial court should have given a jury instruction on superseding intervening cause, it is unlikely that the jury would have found that defendant was not a substantial cause of the accident. Accordingly, if there was an instructional error, defendant was not prejudiced.

## IV. PSIR

In her Standard 4 brief, defendant argues that we should remand to the trial court for correction of her PSIR. We agree.

---

[8] Section 627 of the Michigan Vehicle Code, MCL 257.1 *et seq.,* provides in part:

(1) A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed . . . having due regard to the traffic . . . and any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. [MCL 257.627(1).]

If a defendant challenges information in the PSIR and the trial court "finds the challenged information inaccurate or irrelevant, it must strike that information from the PSIR before sending the report to the Department of Corrections." *People v Maben*, 313 Mich App 545, 554; 884 NW2d 314 (2015) (quotation marks and citation omitted). At sentencing, defendant challenged the scoring of her prior record variables (PRV) on the ground that the PSIR inaccurately stated that she was on probation at the time of the accident. The prosecutor agreed to rescore the PRVs in accordance with defendant's assertion. Thus, although the trial court did not expressly find that defendant was not on probation at the time of the offenses, the court effectively made that determination by rescoring the PRVs and sentencing defendant within the minimum sentencing guidelines range. Accordingly, we remand to the trial court so that it may amend the PSIR to reflect that defendant was not on probation.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant contends via her Standard 4 brief that there was insufficient evidence to sustain her convictions. We disagree.

We review de novo claims of insufficient evidence. *People v Kloosterman*, 296 Mich App 636, 639; 823 NW2d 134 (2012). Reviewing the evidence in a light most favorable to the prosecution, we "determine whether the evidence was sufficient to allow any rational trier of fact to find guilt beyond a reasonable doubt." *Id*.

Defendant argues that there was insufficient evidence for the jury to find that she was driving her vehicle at the time of the accident. Contrary to defendant's assertion on appeal, her expert's DNA analysis did not definitively establish that Williamson was the driver of the vehicle. As the prosecutor argued at trial, one could accept Perlin's findings and still conclude that defendant—not Williamson—was in the driver's seat when the vehicles collided and the airbags deployed. Although Perlin found that both defendant's and Williamson's DNA was on the driver-side airbag, defendant was a major donor while Williamson was a minor donor. This evidence supports the conclusion that defendant was the driver of the vehicle.

Defendant argues that her DNA transferred to the airbag when she climbed over the driver's seat to exit the vehicle. However, "it is unnecessary for the prosecutor to negate every reasonable theory consistent with the defendant's innocence. It is sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991). Further, if defendant was in the passenger seat when the airbags deployed, one would expect that the amount of DNA mixture attributable to her would be more than 40%. Regardless if 40% constitutes a major or minor donor in this case, it is significantly less DNA than what defendant left on the driver-side airbag. Thus, even accepting Perlin's findings, the DNA evidence is more consistent with defendant being the driver of the vehicle than Williamson. Moreover, the jury heard testimony about how Williamson's DNA could have been present in the vehicle when the airbags deployed even if he was not in the vehicle at the time of accident. In addition to driving the vehicle the night of the accident, Williamson estimated that he had driven the vehicle on about 15 other occasions. Additionally, in an interview with law enforcement, defendant disclosed that she and Williamson had sex in her vehicle.

Setting aside the DNA evidence, substantial circumstantial evidence supported the jury's finding that defendant was the driver of the vehicle. Defendant was the owner of the vehicle. Tarcia stopped at the crash and observed defendant exiting the vehicle. No witness saw anyone else exiting the vehicle. Defendant then fled the scene, which was evidence of guilty knowledge. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Initially, she denied to the police that she was even involved in the accident, and she did not identify Williamson as the purported driver of the vehicle until a year after the accident. Williamson testified and denied being the driver of the vehicle, which the jury apparently found credible. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence presented for a rational jury to find that defendant was the driver of the vehicle. For the reasons discussed above, there was also sufficient evidence presented for a rational jury to find that defendant was a proximate cause of the accident.

## VI. PROSECUTORIAL MISCONDUCT

Defendant also argues in her Standard 4 brief that the prosecution engaged in improper cross-examination of her expert witness and made multiple improper comments. We disagree.

We review de novo allegations of prosecutorial misconduct "to determine whether the defendant was denied a fair and impartial trial." *People v Atkins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). "Prosecutorial misconduct issues are decided case by case." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "[P]rosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996).

Defendant presents numerous allegations of prosecutorial misconduct, primarily focusing on the prosecutor's cross-examination of defense expert Perlin. Specifically, the prosecutor asked Perlin whether TrueAllele's scientific reliability had been proven in a Michigan court through a *Daubert*[9] hearing, and he answered negatively. Defendant argues that this line of questioning was improper considering that the prosecutor declined to request a *Daubert* hearing for her expert.[10] On cross-examination, a party "has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify, or explain the

---

[9] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[10] Because the prosecutor did not request a *Daubert* hearing, the trial court did not rule on the reliability of Perlin's methods. Therefore, TrueAllele's reliability is not properly before us, and we decline to make a ruling on that matter as defendant requests.

testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v Bell*, 88 Mich App 345, 349; 276 NW2dd 605 (1979) (quotation marks and citation omitted). The prosecutor's questions on this matter properly highlighted for the jury that TrueAllele is a new and novel way to analyze DNA evidence. Trial counsel could have requested a curative instruction to inform the jury that the prosecution declined to request a *Daubert* hearing, and reversal is not warranted when the prejudicial effect of the prosecutor's statement could be cured by a curative instruction. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Further, during redirect, Perlin testified that TrueAllele has been ruled reliable in several other states and that no such hearing has been held in Michigan. Thus, to the extent that the prosecutor's question was improper or misleading, trial counsel cured any harm to defendant.

Next, defendant argues that it was improper for the prosecutor to ask Perlin about his compensation and to argue that the jury should consider the fact that he was being paid for his testimony in weighing his credibility. MRE 611(c) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Evidence of a witness's bias is "almost always relevant." *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001) (quotation marks and citation omitted). The fact that an expert witness is being paid to testify is relevant to his or her credibility because an expert witness may slant his or her testimony in favor of the retaining party. See *id.* at 763. Thus, it was not improper for the prosecutor to question Perlin about his compensation. Further, once evidence of an expert's compensation was elicited, the prosecutor was "free to argue from the evidence presented at trial that an expert witness had a financial motive to testify." *Unger*, 278 Mich App at 237.

Defendant takes issue with the prosecutor confirming with Perlin that he did not have a "wet laboratory" and asking questions about his staff member's degrees. There was nothing improper about these questions. On direct examination, Perlin testified at length about TrueAllele and how this program works and therefore opened the door to questions about his work facility and the people who execute the TrueAllele software. More generally, defendant contends that the prosecutor impermissibly denigrated Perlin. As noted, the prosecutor had a right to a thorough cross-examination and he was not required to do so in the blandest possible terms. We also note that defendant does not argue that the prosecutor denigrated her or her counsel. Viewed in context, the prosecutor's cross-examination of Perlin did not deny defendant a fair trial.

Defendant also argues that the prosecutor mischaracterized the DNA evidence. "The prosecutor may not make a statement of fact that is unsupported by the evidence. But the prosecutor may argue reasonable inferences arising from the evidence to the extent that the inferences relate to the prosecutor's theory of the case." *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014) (footnotes omitted). Defendant contends that the prosecutor erred in telling the jury that Williamson's DNA could have transferred to the airbag without him being in the vehicle at the time of the accident. However, while the experts testified that a secondary transfer of DNA was less probable than a direct transfer, they also agreed that such a transfer is possible. Thus, the prosecutor did not commit misconduct in making this argument to the jury. Rather, the prosecutor made a reasonable inference from the evidence that Williamson's DNA was deposited on the driver-side airbag through a secondary transfer.

Defendant also argues that the prosecutor erred in stating that defendant was not a major DNA contributor to the passenger-side airbag. Perlin estimated that about 40% of the DNA found on that airbag belonged to defendant. Perlin conceded that it was unclear whether 40% meant that defendant should be considered a major contributor, considering that the other contributors were minor: "[T]he terminology is ambiguous. You could say she's the predominant contributor. Because some people call it major; some people call it minor." Perlin and the prosecutor also disagreed over whether Perlin referred to defendant as a "minor contributor" in his report. So there was evidentiary support for the prosecutor's argument that defendant was not a major contributor to the passenger-side airbag. In sum, the prosecutor did not misstate the DNA evidence.

We have reviewed the remainder of defendant's claims of prosecutorial misconduct and conclude that they are without merit. Defendant argues that numerous comments by the prosecutor in opening statements and closing arguments were either misleading or misrepresentations of the evidence. Again, the prosecutor was allowed to make reasonable inferences from the evidence and he was not required to state his arguments in the blandest terms possible.[11] We also conclude that there is no merit in defendant's claim that the prosecutor elicited false testimony from Tarcia.[12]

We affirm defendant's convictions and remand for correction of the PSIR. We do not retain jurisdiction.


/s/ Christopher M. Murray
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan

---

[11] For instance, defendant objects to the prosecutor stating that she "creamed" the other vehicle in the crash.

[12] Defendant argues that Tarcia's testimony that he saw defendant leaving the vehicle was "false" because Tarcia did not report that observation to law enforcement. However, there is nothing in the record to support this assertion. Officer Ron Wise was cross-examined about whether Tarcia told him that defendant offered money for a ride from the accident scene; he did not testify that Tarcia did not report seeing defendant exit the vehicle.