*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANGELO LLOYD ASHMON II,

Defendant-Appellant.

UNPUBLISHED
February 26, 2019

No. 339433
Wayne Circuit Court
LC No. 15-009599-02-FH

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant, Angelo Ashmon II, appeals as of right his jury trial convictions for felon in possession of a firearm (felon-in-possession), MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), delivery or manufacture of marijuana, MCL 333.7401, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to five years' imprisonment for felony-firearm, and suspended defendant's sentences for his remaining convictions. We affirm.

## I. RELEVANT FACTS

Police arrested defendant pursuant to an October 26, 2015, narcotics raid of 19505 Sunderland Road in Detroit, Michigan. The raid resulted in multiple arrests other than defendant's and the seizure of weapons, ammunition, marijuana, packaging materials, a digital scale, and cash.

At defendant's trial, Detroit Police Officer Matthew Bray, a member of the raid team, testified that he was the first officer on the front porch and was able to see inside the house through a front window because the blinds were open. Looking through the window, he observed defendant and another male sitting at a table. The officer said that he saw defendant and the other individual packaging marijuana into smaller bags, "a couple of handguns on the table," and some money, and he opined that the guns and marijuana were within defendant's immediate reach. Officer Bray conveyed to other members of the raid team that individuals were sitting at a table, and that they had drugs and weapons.

Officer Reginald Beasley, another member of the raid team, testified that Officer Bray told him he saw two males sitting at the dining room table with weapons and marijuana. Likewise, Officer Johnny Fox, also a member of the raid team, said that Officer Bray told him that he saw handguns on the dining room table. Because their focus was elsewhere, neither Officer Beasley nor Officer Fox observed Officer Bray looking through the dining room window. Neither Officer Beasley nor Sergeant Samuel Pionessa, who was the officer in charge of the raid, could remember whether the blinds on the front window were open, but Officer Pionessa testified that officers were able to see through the window.

As the raid unfolded, the people in the dining room fled to bedrooms located in the back of the house. When the raid team's attempt to breach the front door failed, it was able to gain entry to the house through an unlocked side door. Police found defendant lying on the floor in one of the back bedrooms. Pursuant to an inventory search, Officer Fox removed a gun holster from defendant's car. Latent fingerprint expert Ashley Sellenraad testified that she was unable to match any latent fingerprints on the handguns, digital scale, or ammunition with defendant's fingerprints.

Defendant moved for a directed verdict at the close of the prosecution's case, arguing that since no one had testified that they saw defendant with a firearm or even touching any of the firearms recovered from the house, the prosecution failed to present any evidence to sustain defendant's gun charges. The prosecution argued that, when viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence that defendant constructively possessed one of the guns in the dining room because there were multiple guns within defendant's reach and Officer Bray testified that he saw defendant sitting at the table with the guns. The trial court denied defendant's motion, finding that there was sufficient evidence that defendant constructively possessed one of the handguns in the dining room.

Defense witness Darius McCulum testified that he was inside the house during the raid. He said that the two men sitting at the dining room table packaging marijuana were Robert Luke and James Eldridge, and that he never saw defendant sitting at the table. Rather, defendant was standing near the table, looking at his cell phone. McCulum further testified that he did not see any guns inside the house at all that day, but did admit that he saw marijuana, money, and a digital scale on the table and that some individuals were smoking marijuana.

Testifying on his own behalf, defendant said he had been at the 19505 Sunderland Road house for approximately 20 minutes before the police raid. Defendant stated that when the raid began, he had been standing in the doorway of the kitchen near the dining room, looking at his cell phone. He also stated that he never sat at the dining room table, never packaged any marijuana, and that there were no guns on the table. Defendant testified that he decided to leave the house when he noticed that there was a gun on the floor near Eldridge, but police raided the house before he could depart. He further testified that the blinds to the front window were closed when the raid began. Defendant said that the gun holster recovered from his car belonged to his father, who often drove the car and was in the process of obtaining his concealed pistol license.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel rendered constitutionally ineffective assistance. "Because no *Ginther* hearing was held, *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), our review is limited to errors apparent on the record."[1] *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Whether effective assistance of counsel has been denied is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews questions of constitutional law de novo, and factual findings, if any, for clear error. *Jordan*, 275 Mich App at 667.

To establish a claim of ineffective assistance of counsel, the defendant must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018), quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Counsel is presumed to be effective, and defendant bears a heavy burden to demonstrate otherwise. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). Trial counsel has a " 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Trakhtenberg*, 493 Mich at 52, quoting *Strickland*, 466 US at 690-691. Thus, courts must determine whether " 'counsel's strategic choices [were] made after a less than complete investigation,' and any choice is 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id*.

Defendant first argues that, because defense counsel failed to investigate and call certain individuals as witnesses, defense counsel was unable to impeach Officer Bray effectively. Defendant relies upon the affidavits of Bernadine Jordan and her son, Kawon Jordan, who live across the street from the raided home. Each stated that they watched the police raid through the front window of their home, that the front blinds to the dining room window of the 19505 Sunderland Road house were closed, and that they did not observe a police officer look through

---

[1] Defendant filed a motion in this Court for remand to the trial court for a *Ginther* hearing. We denied the motion because the nature of defendant's claims of ineffective assistance of counsel and of the evidence supporting them did not require immediate remand. *People v Ashmon*, unpublished order of the Court of Appeals, entered May 8, 2018 (Docket No. 339433). Thereafter, defendant filed a motion to renew and supplement the motion for a remand, which we also denied. *People v Ashmon*, unpublished order of the Court of Appeals, entered January 29, 2019 (Docket No. 339433). Aside from being opprobrious in alleging police misconduct unrelated to defendant's possession of a weapon, defendant's proposed affidavits did not lead us to conclude that a *Ginther* remand could lead to the production of evidence establishing his ineffective assistance of counsel claim.

the window.[2]  Defendant also relies upon the affidavits of Devon Johnson and Robert Luke, two individuals who were inside 19505 Sunderland Road during the police raid.  Devon and Luke attested that the blinds to the dining room window were closed and that police officers were unable to see any guns that were in the house.  Defendant argues that trial counsel rendered ineffective assistance by failing to investigate and to call these individuals as defense witnesses to impeach Officer Bray's testimony that he saw defendant through the window sitting at a table with marijuana and guns.  We disagree.

Even if we assume for the sake of argument that counsel's failure to call these witnesses constituted deficient performance, our review of the record does not lead to the conclusion that, "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.  "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).  Defense counsel's decision not to call a witness at trial constitutes ineffective assistance of counsel only if it "deprives the defendant of a substantial defense." *Id*. (quotation marks and citation omitted).  "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015).

In the case at bar, defense counsel pursued a defense strategy that attacked the credibility of Officer Bray's testimony that he saw defendant sitting at the dining room table within immediate reach of multiple guns.  Counsel cross-examined Officer Bray about whether the front blinds were open, stressed that Officer Bray was the only police officer who purportedly looked through the front window before the police entered the house, and highlighted inconsistencies between Officer Bray's testimony at trial and at the preliminary investigation.  Defense counsel also elicited testimony from Officer Bray that he never saw defendant handle any of the handguns on the table.  Further, counsel drew testimony from Officer Beasley to the effect that he was not in a position to see Officer Bray look through the dining room window, and from Officer Fox acknowledging Officer Bray as the source of the names he had placed on his firearms report as possible possessors of the firearms seized in the raid.  Finally, both defendant and defense witness McCulum testified that the dining room blinds were closed and that defendant never sat at the dining room table near the guns.  The evidence defense counsel presented at trial put the credibility of Officer Bray's testimony squarely at issue.  In light of this, we cannot say that, but for defense counsel's failure to call Johnson and Luke as witnesses, particularly where their presence in the house at the time of the raid might have been a liability, "there is a reasonable probability that the outcome would have been different." *Trakhtenberg*,

---

[2] Defendant submitted these post-trial affidavits to support his motion for remand to the trial court for a *Ginther* hearing.  A party may not expand the record on appeal.  See *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009).  However, where a party is required to submit "an affidavit or offer of proof regarding the facts to be established at a hearing" in support of his motion to remand, it is appropriate for us to consider his affidavits in determining whether to remand for a *Ginther* hearing.  See *People v Traver*, 316 Mich App 588, 602; 894 NW2d 89 (2016), rev'd on other grounds 502 Mich 23 (2018).

493 Mich at 51. Likewise, we cannot say that the outcome probably would have been different but for counsel's failure to call the Jordans to testify that the dining room blinds were closed, particularly when the officers who entered the house actually found what Officer Bray said he saw through the window. Accordingly, defendant has failed to show that counsel's failure to call certain witnesses constituted constitutionally ineffective assistance.

Defendant next argues that defense counsel rendered constitutionally ineffective assistance because he lacked the requisite knowledge of the law regarding exceptions to the rule prohibiting hearsay testimony. Counsel objected on hearsay grounds to Officer Beasley's testimony regarding what Officer Bray told him. However, the trial court overruled counsel's objection on the ground that the elicited testimony fell under the present sense impression exception to the hearsay rule. On appeal, defendant argues that his trial counsel did not know, and thus did not argue, that the present sense impression exception to the hearsay rule requires independent proof that the underlying event took place, and that this failure constituted ineffective assistance of counsel.

Hearsay is a " 'statement,' other than the one made by a declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless if falls under one of the numerous hearsay exceptions, MRE 802, one of which is the exception for present sense impressions, MRE 803(1). This exception allows for the admission of hearsay if the statement at issue provides an explanation or description of the perceived event, the declarant personally perceived the event, and the explanation or description was made "substantially contemporaneous" with the event. *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612, 616 (2014), quoting *People v Hendrickson*, 459 Mich 229, 236; 586 NW2d 906 (1998) (opinion by KELLY, J.).

Defendant does not contend that Officer Bray's statement of what he saw in 19505 Sunderland Road did not meet the requirements articulated in *Chelmicki*. Rather, he argues that in addition to these requirements, the Michigan Supreme Court also demands proof by a preponderance of the evidence that the underlying event occurred, *Hendrickson*, 459 Mich at 237-238, and that the prosecution did not provide testimony corroborating Officer Bray's claim to have looked through the dining room window. We find defendant's argument unpersuasive. To the extent that corroborating evidence of the underlying event giving rise to the present sense impression is required, the fact that upon entry of the house, police found the conditions as described by Officer Bray sufficient corroboration. See *id*. (stating, "the sufficiency of the corroboration depends on the circumstances of each case").

Defendant next argues that defense counsel was constitutionally ineffective by failing to call his father, Angelo Ashmon, Sr., as a witness to testify that he owned the gun holster found in defendant's car. We disagree. Defendant testified that the gun holster found in his car belonged to his father and that his father usually drives his car. Defendant does not contend that Ashmon, Sr. would have provided any additional testimony that could have changed the outcome of his case. See *Jackson*, 313 Mich App at 432. The fact that the gun holster belonged to Ashmon, Sr. was not relevant to the conditions in the raided house that formed the basis of defendant's convictions. Accordingly, we see no "reasonable probability that the outcome would have been different" had counsel called Ashmon, Sr. to testify to his ownership of the gun holster. *Trakhtenberg*, 493 Mich at 51.

Finally, defendant argues that he was denied the effective assistance of counsel because defense counsel failed to comply with discovery deadlines, and that this failure resulted in counsel not being allowed to enter into evidence a photograph of Leonard Ammons, one of the men inside the house at the time of the raid, with two guns tucked into his waistband. Defendant contends that the photograph would have shown that all of the guns police recovered during the raid belonged to individuals other than defendant. We disagree. First, defendant errs by assuming that a gun has to "belong" to him in order for a jury to convict him of possession of a gun. As will be explained elsewhere in this opinion, ownership of the firearm is not an element of constructive possession. Next, the photographer, Nicholas Johnson, states in his affidavit only that he was at the location of the raid for a short period on the date of the raid. He does not attest to defendant's being there at the same time. Relatedly, the photograph is a snapshot in time; it does not provide evidence of the circumstances at the time of the raid. For all of these reasons, even if defense counsel performed deficiently by failing to make the photograph available to the prosecution in a timely manner, defendant has not demonstrated that, but for counsel's errors leading to preclusion of the photograph, the outcome of his trial would have been different. *Trakhtenberg*, 493 Mich at 51.

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied a fair and impartial trial because the prosecutor stated facts that were not in evidence when he asserted that three officers testified that Officer Bray looked through the dining room window. We disagree. Because defense counsel did not contemporaneously object and request a curative instruction, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review issues of prosecutorial misconduct de novo to determine whether the defendant was denied a fair and impartial trial. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). We review unpreserved claims of prosecutorial misconduct for plain error that affected the defendant's substantial rights. *Bennett*, 290 Mich App at 475. Under the plain error standard, the defendant must satisfy three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 765; 597 NW2d 130 (1999). Even if all three requirements are met, reversal is warranted only when the plain error resulted in an innocent defendant's conviction, or it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476. This Court cannot find error that requires reversal if a curative instruction could have alleviated any prejudicial effect. *Id*. at 476.

"The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007) (quotation marks and citation omitted). We read the prosecutor's remarks as a whole and evaluate them in light of the defendant's arguments and the relationship they bear to the evidence admitted at trial. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). With respect to closing arguments, a prosecutor is prohibited from making statements of fact to the jury that are unsupported by the evidence, but may argue the evidence and reasonable inferences arising therefrom so long as they relate to the prosecution's theory of the case. *People v Johnson*, 315 Mich App 163, 201; 889 NW2d 513 (2016).

During closing argument, the prosecution stated that there were "three other officers telling you that Officer Bray looked in the window and told them something." Defendant argues that this statement amounts to prosecutorial misconduct because no witness testified that they saw Officer Bray look in the window before telling them that defendant sat at the dining room table with guns and marijuana. The prosecution concedes that it did misstate facts as the prosecution did not present three witnesses who testified that Officer Bray looked into the window of 19505 Sunderland Road. Nevertheless, we cannot conclude that the prosecutor's misstatement rises to the level of prosecutorial misconduct. Officer Beasley testified that, during the narcotics raid, Officer Bray told him that he observed two males sitting at the dining room table with guns and marijuana. Officer Fox also testified that Officer Bray told him that he saw handguns on the dining room table before the raid team entered 19505 Sunderland Road. Sergeant Samuel Pionessa testified that, when Officer Bray was standing on the front porch of 19505 Sunderland Road, Officer Bray informed him that "there were narcotics and guns inside" the house. The prosecution's statement arguably reflected a reasonable inference from the testimonies of Officer Bray, Officer Beasley, Officer Fox, and Sergeant Pionessa that, in order to communicate the situation inside the house, Officer Bray had to look through the window.

In addition, to the extent that the prosecution made a misstatement of fact during closing argument, defendant is unable to demonstrate prejudice. The trial court instructed the jury that the attorney's arguments are not evidence and that it should decide the facts of the case based on the testimony of witnesses. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Thus, defendant is not entitled to relief.

## IV. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that his convictions must be vacated because the prosecution failed to present sufficient evidence to establish the element of possession. Again, we disagree. We review challenges to the sufficiency of the evidence de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). Reviewing the record evidence in a light most favorable to the prosecution, this Court asks whether a rational trier of fact could find that the prosecutor proved the essential elements of the crime beyond a reasonable doubt. *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). It is the role of the factfinder, rather than this Court, to determine the weight of the evidence and the credibility of witnesses. *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). This Court resolves any evidentiary conflicts in favor of the prosecution. *Id*.

Convictions for felony-firearm and for felon-in-possession require that the defendant possess a weapon. See *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (possession as an element for felony-firearm); *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016) (possession as an element for felon-in-possession). To be convicted of a possessory crime in Michigan, "actual possession is not required; constructive possession is sufficient." *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). "[A] person has constructive possession if there is proximity to the article together with indicia of control." *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). In other words, "a defendant has

constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id*. at 470-471. The prosecution can establish possession by either circumstantial or direct evidence. *Johnson*, 293 Mich App at 83.

Here, the prosecution presented direct evidence linking defendant to the handguns on the dining room table. Officer Bray testified that he observed defendant sitting at the dining room table with handguns and marijuana. Although Officer Bray did not see defendant physically touch any of the handguns, all of the handguns were within defendant's immediate reach. If believed by the jury, Officer Bray's testimony is sufficient to establish the element of possession beyond a reasonable doubt. See *Hardiman*, 466 Mich at 421. The officer's credibility, as well as the weight of his testimony relative to the other evidence presented at trial, is a matter for the jury to decide. *Lee*, 243 Mich App at 167.

Affirmed.


/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien