# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARY MICHAEL TRAVER,

        Defendant-Appellant.

FOR PUBLICATION
August 2, 2016
9:10 a.m.

No. 325883
Mackinac Circuit Court
LC No. 2012-003474-FH

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

GLEICHER, P.J.

More than a century ago, our Supreme Court declared that "it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he shall state to them fully the law applicable to the facts." *People v Murray*, 72 Mich 10, 16; 40 NW 29 (1888). In this case, the circuit court shirked that duty in two respects. First, the court provided the jurors with written instructions regarding the elements of the offenses with which defendant, Gary Traver, was charged, but never read the elements aloud. While providing a jury with written instructions is a welcome reform, it does not substitute for a spoken charge. Second, the written felony-firearm instruction handed to the jury was hopelessly incorrect, as it omitted the actual elements of the offense.

These errors compel us to reverse Traver's convictions for assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and remand for a new trial.

I

Traver and his neighbor, Patrick St. Andre, shared an access route to their adjacent properties. They disagreed about where each was entitled to park. Tensions flared when Traver allegedly threatened to shoot St. Andre if St. Andre touched Traver's car. A sheriff's deputy called to the scene temporarily defused the situation by suggesting that the two resolve their dispute in "civil court."

The feud re-erupted the next morning. St. Andre recalled that as he walked toward his cabin, Traver shouted obscenities from his trailer window and brandished a gun. Traver advanced an alternate account. St. Andre appeared at his trailer window before daybreak, Traver

asserted, "yelling and screaming . . . maybe a little window banging." Traver recounted that he pulled out the "Glock 40" he kept next to his bed, pointed it "at a 90" and told St. Andre to "get away from my window. Which he did." St. Andre called 911.

According to St. Andre, Traver "came around the corner with the gun and proceeded to assault me," grabbing St. Andre by the shoulders and pushing him down. St. Andre maintained that Traver clutched a weapon throughout the attack. Traver testified that St. Andre had approached in the semidarkness "with his hand out in front of him," so Traver "swatted it out of my face" before returning to his trailer and calling a towing company to have St. Andre's car moved. Traver denied possession of his gun during this phase of the action. When the tow truck arrived, Traver recounted, he put his gun in his back pocket. Traver denied pointing the gun at anyone that day.

In addition to these two widely divergent recollections, allies of the combatants offered conflicting eyewitness versions of what had transpired. A friend of St. Andre's claimed that Traver "flung" St. Andre to the ground and was "waving a handgun . . . all over the place." Traver's friend testified that Traver did not have a gun and that he did not see Traver physically assault St. Andre. An audiotape of St. Andre's 911 call capped the evidence. From start to finish, this was a credibility contest rather than a slam dunk for the prosecution.

Following closing arguments, the trial court read to the jury most of the routine model criminal jury instructions, but excluded M Crim JI 3.20, which provides in relevant part that "[y]ou may find the defendant guilty of all or [any one/any combination] of these crimes . . . or not guilty." The court then stated:

> When you go to the jury room, ladies and gentlemen, you will be provided with a written copy of these instructions *should you so choose*. If there are instructions that I have given and others that I will give you wish [sic] copies of, they will be provided to you. You've already received the charges and the elements of the same. [Emphasis added.]

At the outset of the trial, the court had provided the jurors with written instructions reciting the elements of the charged offenses.[1] An official copy of these instructions is nowhere to be found in the record. Attached to a couple of handwritten juror questions stuck loosely in the court file are two heavily folded copies of a two-page, typed document, which we reprint in their entirety here, complete with a juror's notes:

---

[1] In its preliminary instructions the trial court stated: "[T]o prove the charges, the prosecutor must prove beyond a reasonable doubt the following information that you have in your hand. I'd ask you take a look now at what has been passed out to you."

*Not Guilty*

## Count 1-Carrying Concealed Weapon-Dangerous Weapon

The defendant is charged with the crime of carrying a concealed weapon. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First- that the defendant knowingly carried a weapon-a pistol. It does not matter why the defendant was carrying the weapon, but to be guilty of this crime the defendant must have known that it was a weapon.

Second- that this pistol was concealed. Complete invisibility is not required. A weapon is concealed if it cannot easily be seen by those who come into ordinary contact with the defendant.

*Guilty*

## Count 2-Assault with a Dangerous Weapon

The defendant is charged with the crime of felonious assault. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First- that the defendant either attempted to commit a battery on Patrick Richard St.Andre or did an act that would cause a reasonable person to fear or apprehend an immediate battery. A battery is a forceful or violent touching of the person or something closely connected with the person

Second- that the defendant intended either to injure Patrick Richard St.Andre or to make Patrick Richard St.Andre reasonable fear an immediate battery.

Third- that at the time, the defendant had the ability to commit a battery, appeared to have the ability, or thought he had the ability.

Fourth- that the defendant committed the assault with a dangerous weapon-pistol.

Count 3- Telephone Interference

The defendant is charged with the crime of interfering with an electronic communication. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First- that the defendant prevented, obstructed, or delayed, by any means, the sending of an authorized communication through any electronic medium of communication. It does not matter whether the communication was actually sent or received.

Second- that the defendant did this willfully and maliciously. This means that the defendant did the act on purpose and with the intent to prevent, obstruct, or delay the communication.

Count 4- Felony Firearm-Possession

Possession does not necessarily mean ownership. Possession means that either:

1) The person has actual physical control of the thing as I do with the pen I am now holding, or
2) The person knows the location of the firearm and has reasonable access to it.

Possession may be sole where one person alone possesses the firearm.

Likely these are the same instructions distributed at the outset of the case. At no time did the trial court orally instruct the jury regarding the elements of the charged offenses. The jury convicted Traver of felonious assault and felony-firearm. It acquitted him of carrying a concealed weapon, MCL 750.227, and interfering with electronic communications, MCL 750.540(5)(a).

II

Traver's appellate counsel contends that the trial court "deprived the jury of an understanding of what the Prosecutor had to prove beyond a reasonable doubt" by failing to read aloud the elements of the two counts on which Traver was found guilty. The absence of any objection to this omission, Traver asserts, constitutes ineffective assistance of counsel. Appellate counsel further complains that the trial court failed to give M Crim JI 3.20, and that the instructions as given were defective.

Two court rules address the process of instructing a jury. Neither specifically states that the instructions must be oral. But both contemplate that instructions must always be spoken, at least in the first instance. Under the court rules, written instructions serve as an adjunct to the spoken instructions. Read in context, a trial court may not simply skip the reading-aloud step by merely handing the jurors a document listing the elements of the charged crimes.

The first pertinent court rule, MCR 2.512, provides that after the parties submit written requests for jury instructions, "[t]he court shall inform the attorneys of its proposed action on the requests before their arguments to the jury." MCR 2.512(A)(4). Perhaps that was done here,

-4-

despite that it was not recorded.[2]  Once the trial court determines which instructions it will give, it "shall instruct the jury on the applicable law" either before or after the arguments of counsel, "or at both times as the court elects."  MCL 2.512(B)(2).  If the Committee on Model Criminal Jury Instructions approves an instruction, it must be given if it applies, is accurate, and is requested by a party.  MCL 2.512(D)(2).

MCL 2.513(N) also addresses jury instructions.  It provides in relevant part:

(1)  Before closing arguments, the court must give the parties a reasonable opportunity to submit written requests for jury instructions.  Each party must serve a copy of the written request on all other parties.  The court must inform the parties of its proposed action on the requests before their closing arguments.  After closing arguments are made or waived, the court must instruct the jury as required and appropriate, but at the discretion of the court, and on notice to the parties, the court may instruct the jury before the parties make closing arguments.  After jury deliberations begin, the court may give additional instructions that are appropriate.

The phrase "the court must instruct the jury" carries a plain, ordinary, and commonly understood meaning.  Judges instruct juries by speaking to them out loud, reading jury instructions or reciting them from memory.  Spoken communication of the final instructions is deeply ingrained in the history of jury trials.  "Charging" a jury, a time-honored description of the instruction process, involves a judge *telling* the jurors what the law is, and explaining the deliberative process.

Subsection (N)(3) cements our common-sense construction of the court rules as a mandate for spoken instructions.  It states:

*Copies of Final Instructions.*  The court shall provide a written copy of the final jury instructions to take into the jury room for deliberation.  Upon request by any juror, the court may provide additional copies as necessary.  The court, in its discretion, also may provide the jury with a copy of electronically recorded instructions.

Had the Supreme Court contemplated that a trial court could dispense with orally instructing the jury, MCL 2.513(N)(3) would be surplusage.

Resorting to a dictionary yields the same conclusion.  The rules cited above repeat the same verb in relation to a trial court's task of imparting the law: "instruct."  That word is commonly defined as "to give knowledge to: teach, train," "to provide with authoritative

---

[2] The trial court required the parties to submit written jury instructions, and those instructions appear in the record.  Conspicuously absent from the record is any indication that the court and the parties discussed the jury instructions.  If a conference occurred, it was not transcribed or otherwise noted.  No "official" complete copy of the instructions appears in the record.

information or advice," or "to give someone an order or command." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 649. While "instructions" may be in written form, by using the word "instruct" in the court rules, the Supreme Court signaled that a trial judge would orally "teach" the jury the law. Teaching almost always begins as a verbal experience. And historically, judges have taught jurors the law by speaking to them, reading instructions, and by answering their questions aloud.[3]

There are important reasons that in the English and American legal traditions, jury instructions are always spoken. "Reading a complete set of instructions after the evidence ensures that the jury hears and considers all applicable law before deliberations." *State v Nelson*, 1998 SD 124; 587 NW2d 439, 444 (1998). "Instruction of the jury is one of the most fundamental duties of the court and it is only through their oral delivery that the court can be assured that the jury has actually received all of the instructions." *State v Norris*, 10 Kan App 2d 397, 401; 699 P2d 585 (1985).

In *Nelson*, the South Dakota Supreme Court explained that reading instructions aloud facilitates a fair trial. Reading out loud "aids understanding." *Nelson*, 587 NW2d at 444. "Repetition by first hearing the instructions and then reading them enhances recall as well as comprehension." *Id.* And the court cannot assume that all jurors have actually read the instructions sent into the jury room, even if each was handed a copy. *Id.* We would add several other considerations. First, some jurors may not be able to read, or may read poorly. For such jurors, hearing instructions read aloud is the only method that insures a measure of comprehension. Poorer readers may elect not to engage in the deliberations for fear that their comprehension may be called into question. Second, that a judge speaks the elements of an offense, in conjunction with the admonition that all must be proven beyond a reasonable doubt, communicates the gravity of the task of sitting in judgment. Handing jurors a few pieces of paper and telling them, in essence, to "make the best of it" sends a message that the legal "technicalities" are too unimportant to justify further expenditure of the court's time.[4]

---

[3] As sagely stated in Smith, *Effective Instructions to the Federal Jury in Civil Cases: A Consideration in Microcosm*, 18 Syracuse L Rev 559, 570 (1967):

> A jury charge is in effect a lecture on the law and the facts of a particular case. As such, the judge becomes a professor and acting in that capacity he must impart to his students, the jurors, a wide yet basic understanding of many new and complicated matters (some of which are not easily comprehended by lawyers) in one lecture. If impediments in the court's medium of communication arise, the charge may just as well have been delivered in a foreign language.

[4] The Kansas Court of Appeals raised similar concerns in *Norris*, 10 Kan App 2d at 401:

> If, for example, written copies of the instructions are given to each juror, a divergence in literacy and reading comprehension may well leave some jurors uninstructed. On the other hand, if the foreman is directed to read the instructions to the other jurors, defendant is deprived of the opportunity to witness the manner

The trial court's failure to verbally communicate a complete set of jury instructions constituted plain error that affected Traver's substantial "right to have a properly instructed jury pass upon the evidence." *People v Liggett*, 378 Mich 706, 714; 148 NW2d 784 (1967). That error seriously affected the integrity of the proceedings, as a defendant in a criminal case "has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). It is impossible to determine whether the jurors who determined Traver's guilt actually received and considered the instructions addressing the elements of the charged offenses. This hole in the record impugns the integrity of the proceedings, requiring reversal of both convictions.

## III

A second instructional error more definitively compels a new trial.

As displayed above, the written information given to the jury regarding the felony-firearm charge covered the issue of possession, but said nothing at all about the actual offense of felony-firearm. The model instruction for this charge states as follows:

M Crim JI 11.34

Possession of Firearm at Time of Commission or Attempted Commission of
Felony (Felony Firearm)

(1) The defendant is also charged with the separate crime of possessing a firearm at the time [he/she] committed [or attempted to commit] the crime of _____.

(2) To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(3) First, that the defendant committed [or attempted to commit] the crime of _____, which has been defined for you. It is not necessary, however, that the defendant be convicted of that crime.

(4) Second, that at the time the defendant committed [or attempted to commit] that crime [he/she] knowingly carried or possessed a firearm.

---

in which the foreman intones the instructions. A judge is obligated to act in an impartial and unbiased manner in delivering instructions. He may not sneeringly describe the defendant's defense or make editorial comments while reading the instructions. A jury foreman is under no such constraint once the case has been submitted. Moreover, if, as in this case, the court does not even instruct the jury to read the instructions before deliberating, there is no assurance that the instructions were in fact read or that the verdict is based upon an application of the law to the evidence.

The jury was not instructed as to either of the two elements of this offense. Nor did defense counsel request that the trial court instruct the jury as to the elements of felony-firearm. To his credit, the prosecutor did. By failing to provide the jury with the model instruction, the trial court violated MCR 2.512(D)(2), as the instruction requested by the prosecutor was applicable and accurate.

We need not dwell on the standard governing the review of this error, or resort to ineffective assistance of counsel principles to circumvent potential waiver issues, as the bottom line is not subject to debate. "A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *Kowalski*, 489 Mich at 501. Although instructional errors that misstate or omit elements of a crime do not necessarily mandate a new trial, *id.*, the *absence of any instruction* at all surely does. Indeed, our Supreme Court held in a substantially similar case, *People v Duncan*, 462 Mich 47; 610 NW2d 551 (2000), that the failure to instruct on the elements of felony-firearm constitutes structural error. The Court iterated a "bright line rule" that governs this case: "It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt." *Id.* at 48.

The trial court never instructed the jury regarding the elements of the crimes and then provided inaccurate written instructions regarding the elements of felony-firearm. This error obligates this Court to reverse Traver's convictions, both for felonious assault and felony-firearm.

IV

Traver also contends that ineffective assistance of counsel tainted his decision to withdraw a plea agreement that would have avoided incarceration. Traver alleged in an affidavit that he would not have proceeded to withdraw his plea had he known that the prosecution planned to add a felony-firearm charge if the plea-withdrawal motion succeeded. In his accompanying affidavit, Traver avers:

> 9.    . . . [S]ubsequent to my motion to withdraw plea being granted the prosecutor added a charge of felony firearm.

> 10.    . . . I [sic] was never explained that the prosecutor was going to do this and that I was not told that this charge carried a 2 year mandatory prison sentence if convicted.

Traver's allegations regarding his counsel's deficient performance require a remand for an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). The United States Supreme Court held in *Padilla v Kentucky*, 559 US 356; 130 S Ct 1473; 176 L Ed 2d 284 (2010), that the right to the effective assistance of counsel encompasses counsel's obligation to inform a defendant of the immigration consequences of a guilty plea. The converse must also apply: before withdrawing a guilty plea, a defendant must be advised of the advantages and disadvantages of such an act. Whether Traver was adequately advised of the promised

collateral consequence of plea withdrawal cannot be ascertained on this record. Accordingly, before retrying Traver on the charges levied against him, the trial court must conduct a *Ginther* hearing if Traver requests one. If the court determines that counsel performed ineffectively by failing to advise Traver that the prosecutor intended to file a felony-firearm charge carrying a mandatory two-year imprisonment penalty, and that Traver would have declined to withdraw his plea had he been aware of this risk, the court must then order the prosecutor to reoffer the original plea agreement. See *Lafler v Cooper*, __ US __; 132 S Ct 1376, 1391; 182 L Ed 2d 398 (2012).

We reverse Traver's convictions and sentences and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly