*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALIZE ZACHARY DWAYNE MONTAGUE,

Defendant-Appellant.

FOR PUBLICATION
July 1, 2021
9:05 a.m.

Nos. 352089; 352090
Luce Circuit Court
LC Nos. 2017-001315-FC
2017-001314-FC

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

MURRAY, C.J.

In Docket No. 352089, defendant appeals as of right his jury trial convictions of prisoner taking a hostage, MCL 750.349a, and kidnapping, MCL 750.249. In Docket No. 352090, defendant appeals as of right his conviction of escaping from prison, MCL 750.193, rendered by the same jury. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 30 to 60 years' imprisonment for both prisoner taking a hostage and kidnapping, and six to 20 years' imprisonment for escaping from prison. We affirm.

## I. STATEMENT OF FACTS

Defendant was imprisoned at the Newberry Correctional Facility on August 15 and 16, 2016. Sometime after 11:00 p.m. on August 15, he climbed out a window, boosted himself onto the roof, and jumped to the ground of the outside recreational facility. He then proceeded to climb the two barbed wire fences surrounding the facility, setting off an alarm, and ran into the woods. State Troopers Nathan Grenfell and Adam Laninga were dispatched to the prison and, once there, were able to follow a blood trail until they were dispatched to a nearby motel, America's Best Value Inn. Heather Thornton was working the night shift at the motel's front desk, and around 1:30 a.m. she went into a back office to rest on a rollaway bed.

About an hour later, Thornton heard talking in the lobby, so she exited the back office and saw defendant behind the front desk talking on the phone. Defendant was bleeding profusely, and Thornton said that they should call 911, but defendant did not want to because he said that his cousin cut him, and he did not want his cousin to get in trouble. Defendant needed a ride, and Thornton directed him to go back into the lobby and around the other side of the front desk. When

-1-

defendant complied, Thornton tried to shut the door separating the area behind the front desk to the lobby, but defendant stopped the door from closing with his foot. Thornton told defendant that he was making her feel threatened, defendant removed his foot, and the door shut and locked automatically. Defendant tried opening it, but then walked into the lobby and met Thornton at the front desk. Thornton dialed a number for defendant, and when someone answered, she handed defendant the phone.

As defendant was talking, Thornton ran to the back office to call the police from a landline telephone on a desk. As she was calling for help, defendant kicked down the locked door to the back office. Thornton tried to move behind the desk, but defendant threw her to the side, and she fell and dropped the phone. Defendant took a box cutter off the windowsill and Thornton's cell phone off the rollaway bed. As Thornton tried to get her cell phone back from defendant, they pushed each other, and she ended up on the ground. Thornton ultimately retrieved her cell phone, and threw it under the bed. Defendant gestured with the box cutter, blade open, for Thornton to get her cell phone, which she did and gave to him. Defendant pulled the landline phone out of the socket and threw it. Defendant asked for Thornton's car keys, and he grabbed them from her purse as well as about $15 in cash from the top of the desk.

Defendant started telling Thornton that she had to go with him while gesturing with the box cutter. Thornton repeatedly told defendant that he could take her car, and she would get him more money and unlock her cell phone for him, but he kept insisting that she go with him. They left the back office, with Thornton walking in front of defendant, toward the main entrance doors in the lobby. As Thornton exited the motel, she saw police entering the parking lot, so she ran away from defendant and toward other parked cars.

In route to the motel, Grenfell and Laninga met the other dispatched troopers, Jeffrey Rogers and Zachary Drogowski. When the troopers pulled in to the motel lot, they all saw Thornton running across the parking lot waving her hands and pointing toward defendant, who was approaching a vehicle and trying to get inside. The troopers exited their vehicles with guns drawn, giving loud verbal commands for defendant to surrender and put his hands up. Defendant opened the car door, got in the driver's seat, and was fumbling in an attempt to start the car. Defendant ultimately surrendered, and was taken to the hospital. On the ground near the driver's side door, police found the box cutter, keys, and Thornton's cell phone. Subsequent tests revealed that the DNA on the box cutter and money found in defendant's waistband matched each other and matched defendant's DNA.

Defendant was charged with escape from prison in Lower Court No. 2017-001314-FC, and prisoner taking a hostage, armed robbery, MCL 750.529, kidnapping, and assault with a dangerous weapon (felonious assault), MCL 750.82, in Lower Court No. 2017-001315-FC. The two cases were joined for trial, and the jury found defendant guilty of prisoner taking a hostage, kidnapping, and escape from prison, and not guilty of armed robbery and felonious assault.

## II. ANALYSIS

### A. JURY INSTRUCTIONS

Defendant first argues that he was denied due process because the trial court did not, within the instructions for both prisoner taking a hostage and kidnapping, include in its definition of "hostage" the key element of influence on a third party.

Claims of instructional error are reviewed de novo. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). This Court reviews the trial court's "determination whether a jury instruction is applicable to the facts of the case" for an abuse of discretion. *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012) (quotation marks and citation omitted).

A criminal defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 121 (1995). "The trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. There must be evidence to support jury instructions about the "elements of the charged crimes" and "material issues, defenses, or theories." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). There is no error when the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v McFall*, 224 Mich App 403, 412-413; 569 NW2d 828 (1997). Finally, jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury. *People v Holt*, 207 Mich App 113, 116; 523 NW2d 856 (1994). "The reviewing court must balance the general tenor of the instructions in their entirety against the potentially misleading effect of a single isolated sentence." *People v Waclawski*, 286 Mich App 634, 675; 780 NW2d 321 (2009), citing *People v Freedland*, 178 Mich App 761, 766; 444 NW2d 250 (1989).

The prisoner taking a hostage statute, MCL 750.349a, provides that "[a] person imprisoned in any penal or correctional institution located in this state who takes, holds, carries away, decoys, entices away or secrets another person as a hostage by means of threats, coercion, intimidation or physical force is guilty of a felony and shall be imprisoned in the state prison for life, or any term of years, which shall be served as a consecutive sentence." MCL 750.349(1)(a) provides that a person commits kidnapping when that person "knowingly restrains another person with the intent to" . . . "[u]se that person as a shield or hostage." Neither statute provides a definition of the term "hostage."

The "pertinent model jury instructions 'must be given in each action in which jury instructions are given' if the model instructions 'are applicable,' 'accurately state the applicable law,' and 'are requested by a party.' " *People v Bush*, 315 Mich App 237, 243; 890 NW2d 370 (2016), quoting MCR 2.512(D)(2). "The Michigan Court Rules do not limit the power of trial courts to give 'additional instructions on applicable law not covered by the model instructions' as long as the additional instructions are 'concise, understandable, conversational, unslanted, and nonargumentative' and are 'patterned as nearly as practicable after the style of the model instructions.' " *Id*., quoting MCR 2.512(D)(4). See also *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001) ("When the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence.").

## 1. PRISONER TAKING A HOSTAGE

Because there is no Model Criminal Jury Instruction pertaining to the prisoner taking a hostage statute, see M Crim JI 19.1 *et seq.*[1], both parties requested a special jury instruction in their trial briefs for Count I, which included a definition of the term "hostage." Defendant requested that "hostage" be defined as "the unlawful taking, restraining, or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person," the definition provided in *People v Cousins*, 139 Mich App 583; 363 NW2d 285 (1984). The prosecution requested a jury instruction defining "hostage" as "a person taken by force to secure the taker's demands."[2] The court never placed its ruling on this issue on the record, but used the definition offered by the prosecution at trial during preliminary and final jury instructions.

The meaning of "hostage" in the prisoner taking a hostage statute, MCL 750.349a, was first and only considered in *Cousins*, 139 Mich App at 590. The *Cousins* Court looked to outside jurisdictions, namely, *State v Crump*, 82 NM 487; 484 P2d 329 (1971), which defined "hostage" under New Mexico's kidnapping statute as "impl[ying] the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person." *Cousins*, 139 Mich App at 590 (quotation marks omitted). This Court adopted that definition. *Id*. Even though we are not required to follow the pre-1990 decision in *Cousins*, see MCR 7.215(J)(1), it was binding on the trial court under stare decisis. See MCR 7.215(C)(2) and *Tebo v Havlik*, 418 Mich 350, 362; 343 NW2d 181 (1984). Consequently, the trial court abused its discretion when it failed to give the definition of "hostage" as provided by *Cousins*, and requested by defendant in his trial brief, to the jury in its instructions on prisoner taking a hostage.[3]

Nonetheless, any error by the trial court was harmless. An error is presumed to be harmless, and defendant bears the burden of proving otherwise. MCL 769.26; *People v Lukity*, 460 Mich 484, 493-495; 596 NW2d 607 (1999). Under the harmless-error doctrine, this Court will only reverse if " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Id*. at 495-496, quoting MCL 769.26.

There are several reasons why we conclude that it was harmless error to provide the jury with this dictionary definition of hostage, as opposed to the one approved in *Cousins*. First, in conducting a harmless-error review, it is both obvious and critical that we remain focused on the facts presented to the jury. *People v Gillis*, 474 Mich 105, 140 n 18; 712 NW2d 419 (2006) (instructional error is non-constitutional and does not warrant reversal when "'after an examination

---

[1] Chapter 19 of the Michigan Model Criminal Jury Instructions pertains to kidnapping.

[2] This is the definition of "hostage" provided in *Merriam-Webster's Collegiate Dictionary* (11th ed).

[3] In essence, the definition provided by the trial court was a more condensed definition of what *Cousins* provided as the meaning of hostage.

of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative.")[4]; *People v Roberson*, 167 Mich App 501, 517; 423 NW2d 245 (1988) (instructional error was harmless in light of overwhelming evidence of defendant's guilt). Here, those facts establish that defendant had that night escaped from a state prison, and when he entered the motel, he was cut and bleeding significantly. During the encounter inside the motel, defendant stopped Thornton from continuing her call to the 911 operator, realized he needed to get further away from authorities, and was ultimately violent towards Thornton when trying to obtain her phone and car keys. Importantly, prior to making Thornton leave the motel office with him, defendant *already had* the car keys and phone, yet defendant *still* forced her to go ahead of him while proceeding into the parking area and to her car. And, while doing so, Thornton told defendant that he would be committing kidnapping if he made her leave, to which he replied "I already have one of those. I don't care."

These facts overwhelmingly support that defendant used Thornton as a hostage as defined in *Cousins*, and as commonly understood.[5] For one, defendant recognized that was what he was doing, but proceeded anyway. Additionally, why else would defendant force Thornton at knife point to leave the building with him if he wasn't doing it as protection in case authorities show up? Given his current state of affairs (escaping prison a couple hours earlier, Thornton calling authorities, and thus his knowing that authorities were surely out to get him), and his already possessing the car keys and cell phone (and cash), it really could be only one thing: to avoid capture if authorities appeared to apprehend him. It's the only conclusion the jury could have made under this scenario, and fits squarely within the *Cousins* definition of hostage, which is the common understanding of that term. The same conclusion fits within the definition provided by the trial court, and eliminates any concern that the jury convicted defendant for holding Thornton hostage to secure demands placed upon her. Consequently, although under the dictionary definition of hostage used by the trial court it is theoretically possible for a defendant to be convicted without the intent to force a third party to do or not do some act, under *these* facts *this* jury could not reasonably come to that conclusion. In other words, whether under the more-narrow *Cousins* definition or the broader dictionary definition, given these facts, the only reasonable conclusion was that defendant took Thornton into the parking area at knife point as a shield to ensure his escape should authorities appear. The error is therefore harmless.

The dissent disagrees with this point, and posits that not even the prosecutor theorized that this is why defendant forced Thornton to leave at knife point, as he only argued it was to obtain the car and phone. We don't read the record so exclusively, and nor do we see the importance of this point. As to the record, during opening statements the prosecutor forecasted for the jury that no *direct* evidence would be submitted regarding defendant's actual motivation in forcing Thornton at knife point out of the motel and into the parking lot, but that the evidence would show his motivation could have been to "keep the authorities away." So too in closing argument, where he mentioned that defendant "is taking Ms. Thornton to secure his demands. What he needs done,

---

[4] Quoting *Lukity*, 460 Mich at 495-496.

[5] The *Cousins* Court held that the term "hostage" was "generally familiar to and comprehensible by lay persons, and therefore the trial court's failure to instruct on the *Crump* definition did not constitute a miscarriage of justice requiring reversal." *Id*. at 593.

to aid in his escape." Though, as the dissent correctly states, this was not the only focus of the prosecutor, as he also discussed at length defendant's need to obtain the phone and car, both his opening and closings referenced the theory that defendant did what he did to aid in his escape, including keeping the authorities away. In any event, the trial court properly instructed the jury that what the attorneys argue is not evidence, *People v Unger*, 278 Mich App 210, 240-241; 749 NW2d 272 (2008), and what they posit as a theory cannot undermine the verdict itself, which has overwhelming support in the record.

## 2. KIDNAPPING

Defendant also argues that the *Crump* definition of "hostage" should be applied to, and have been included within, the jury instruction on kidnapping. We reject this argument for two reasons. First, the analysis in *Cousins* makes clear that the adoption of this definition of "hostage" specifically applied to the prisoner taking a hostage statute, MCL 750.349a, *Cousins*, 139 Mich App at 590-591, and it was not and has not been applied to the kidnapping statute, MCL 750.349. Second, the trial court provided the Model Criminal Jury Instruction for kidnapping, M Crim JI 19.1, which provides that when the defendant knowingly restrained another person, he intended to do "one or more of the following," including "use that person as a shield or hostage." M Crim JI 19.1(3)(b).[6] The trial court's instruction mirrors the model instruction and only provided subsection (b) as the other scenarios did not apply. Thus, the trial court did not abuse its discretion by providing the model jury instruction for kidnapping, and defendant is not entitled to any relief in this regard.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his convictions of prisoner taking a hostage and kidnapping because there was no evidence establishing that defendant intended to take Thornton as a hostage, or use her as security to influence a third party.

This Court will review a challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The evidence is reviewed "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). The standard this Court uses to review sufficiency of the evidence is "not whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Hampton*, 407 Mich 354, 356; 285 NW2d 284 (1979). When reviewing the evidence, factual conflicts are to be viewed in a light most favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1993). Furthermore, it is up to the jury to weigh the evidence presented, and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008).

---

[6] The Model Criminal Jury Instructions are mandatory if applicable, accurate, and requested. MCR 2.512(B)(2); *People v Traver*, 316 Mich App 588, 596; 894 NW2d 89 (2016).

Again, we look to *Cousins* as instructive. In *Cousins*, the defendant was being transported by a deputy from the courthouse back to the jail through a security elevator and tunnel. *Id*. at 586-587. When the elevator opened in the basement to the tunnel, the defendant physically assaulted the deputy, and demanded the deputy's gun, which went off and injured the deputy. *Id*. at 587. The two exited the elevator, and the defendant hit the deputy over the head with the gun. *Id*. The next thing the deputy could recall was being on the second floor lying next to a wall with the defendant standing near him, and then being in a courtroom to announce that the defendant escaped. *Id*. The only way the deputy could have been on the second floor was by the elevator, but he had no recollection of it. *Id*. The defendant testified that he took the elevator to the second floor and fled the building, but did not take the deputy with him. *Id*. at 588. After fleeing the courthouse, the defendant shot a postal worker, and then entered a woman's home and demanded at gun point that she drive him to Detroit. *Id*. at 588-589.

The *Cousins* Court had to determine whether the evidence was sufficient that the defendant took the deputy in the elevator and to the second floor with the intent to use the deputy as a hostage, i.e., "as security for the performance or forbearance of some act by a third person." *Id*. at 591. Viewing the evidence in the light most favorable to the prosecution, the Court determined that the jury could have inferred beyond a reasonable doubt that the defendant took the deputy into the elevator with the intent to use the deputy as a hostage "if necessary," noting that the defendant would have had to go through a public area to leave the building. *Id*. The Court noted that testimony by the defendant indicating his readiness to use the woman as a hostage supported an inference that he intended to use the deputy as a hostage if needed. *Id*. at 592. Lastly, although the jury could have found that the defendant took the deputy into the elevator to prevent the deputy from sounding an alarm, "the evidence did not preclude the jury from finding otherwise." *Id*.

Here, viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient for the jury to infer beyond a reasonable doubt that defendant had the intent to use Thornton as a hostage "if necessary," *id*. at 591, which he did not have the opportunity to do. Although defendant was off the prison property at the time, he still needed to get to a place of safe haven, and repeatedly told Thornton that he needed a ride. He clearly wanted to get further away from the prison facility, which would necessitate travel along public highways. The fact that there was no testimony by defendant indicating an intent to use Thornton as a hostage, as there was in *Cousins*, does not sufficiently distinguish *Cousins*. Although the jury could have found that defendant directed Thornton to accompany him merely to obtain access to Thornton's cell phone and car keys, this "evidence did not preclude the jury from finding otherwise." *Id*. at 592. Thornton testified that defendant had her cell phone, car keys, money, and the box cutter in his possession, yet he still insisted that she come with him despite her many protestations. Therefore, the evidence was sufficient that defendant had the intent to use Thornton as a hostage "if the need arose." *Id*.

In regards to the kidnapping statute, the evidence was likewise sufficient that defendant intended to use Thornton as a hostage based on the same reasoning, but also that defendant used Thornton as a shield. MCL 750.349(1)(b). Defendant knew that Thornton had called 911. He broke down the door to the back office while Thornton was on the phone, threw Thornton to the ground, and ripped the landline telephone out of the wall. Knowing that 911 was called, defendant gestured with the box cutter for Thornton to come with him while exiting the hotel, and she walked ahead of him "so he could watch [her]." Thornton said, "You know, he was threatening me. So,

he was kind of behind me. To make sure I was doing what I was—what he wanted me to do." Thus, the evidence was also sufficient under the kidnapping statute for the jury to find beyond a reasonable doubt that defendant had the intent to use Thornton as a shield or hostage. MCL 750.349(1)(b).

## C. MOTION TO QUASH

We next turn to defendant's argument that the trial court abused its discretion when it denied his motion to quash based on its incorrect interpretation of the prisoner taking a hostage statute, MCL 750.349a. Specifically, defendant argued in his motion to quash that he was not "imprisoned" under the statute, having escaped from the facility when the incident with Thornton occurred.

"A trial court's decision regarding a motion to quash an information is reviewed for an abuse of discretion." *People v Zitka*, 325 Mich App 38, 43; 922 NW2d 696 (2018). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. "To the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Id*. at 44. As noted more fully above, defendant's challenge to the sufficiency of the evidence is also reviewed de novo. *Hawkins*, 245 Mich App at 457.

When interpreting the meaning of a statute, the Court's primary goal is "to ascertain and give effect to the intent of the Legislature." *People v Thomas*, 263 Mich App 70, 73; 687 NW2d 598 (2004) (quotation marks and citations omitted). When a statute is clear, it must be enforced as written. *Id*. When a statute is susceptible to multiple interpretations, "judicial construction is proper to determine legislative intent." *Id*. (quotation marks and citation omitted).

> Statutory language should be construed reasonably, keeping in mind the purpose of the act. When terms are not expressly defined by statute, a court may consult dictionary definitions. Words should be given their common, generally accepted meaning, if consistent with the legislative aim in enacting the statute. [*Id*. (quotation marks and citations omitted).]

The court denied defendant's motion to quash, reasoning that defendant's status as a person imprisoned and subject to an order of incarceration did not change when he was away from the facility without permission. What was determinative was defendant's legal status at the time, ergo he was a prisoner away without leave. The court noted that defendant's reasoning would "have a prisoner while being transported to another facility or receiving medical treatment outside his normal location to be determined not a person imprisoned at the time. The Court seriously doubts this was the intention of the Legislature."

The trial court did not abuse its discretion in denying defendant's motion to quash by concluding that defendant was a "person imprisoned" for the purposes of MCL 750.349a. The

statute does not define the term "imprisoned," nor does any caselaw for the purpose of this statute.[7] Thus, we turn to the dictionary to determine its ordinary usage. *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). "Imprisonment" is defined as "[t]he act of confining a person, esp. in a prison," "[t]he quality, state, or condition of being confined," "[t]he period during which a person is not at liberty." *Black's Law Dictionary* (11th ed). "Imprison" is defined as "to put in or as if in prison, confine." *Merriam-Webster's Collegiate Dictionary* (11th ed).

Considering these definitions in conjunction with the purposes of the prisoner taking a hostage statute, we conclude that "imprisoned" means that the person is confined within a prison or subject to an order of imprisonment wherein the individual is not at liberty to be outside the confines of the prison or outside the control of a prison employee when the kidnapping occurs. Based on these dictionary definitions, it was not an abuse of discretion for the trial court to deny defendant's motion to quash, as it properly concluded that a "person imprisoned" includes those prisoners whose legal status is subject to an order of imprisonment, but who take a hostage outside the actual confines of the prison facility. And here, at the time of his actions against Thornton, defendant was certainly in a state "of being confined," and "not at liberty," *Black's Law Dictionary* (11th ed), as he had no authority to be outside the facility at the time of these crimes. As such, the trial court did not abuse its discretion.

## D. INCONSISTENT VERDICTS

Defendant next argues that the jury rendered inconsistent verdicts when it acquitted him of armed robbery and felonious assault, but convicted him of prisoner taking a hostage and kidnapping predicated on his taking Thornton at knife point.

To properly preserve most issues for appeal, a party must object in the trial court. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Defendant's argument that the trial court rendered inconsistent verdicts was raised for the first time in defendant's brief on appeal. Therefore, the issue is not preserved, *id.*, and is reviewed for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant must demonstrate that an error occurred, the error was plain, and the plain error affected his substantial rights. *Id.* at 763. "The third prong requires a showing of prejudice, which occurs when the error affected

---

[7] In most cases citing this statute, the defendant prisoner committed the crime by taking a hostage within the confines of a prison. See *People v Hobbs*, unpublished per curiam opinion of the Court of Appeals, issued April 2, 2013 (Docket No. 308477) (the defendant inmate used a shank to take a prison secretary hostage), *People v Rhinehart*, unpublished per curiam opinion of the Court of Appeals, issued May 13, 1997 (Docket No. 193654) (the defendant inmate held a female prison employee hostage for hours holding scissors to her neck), *People v Travis*, 182 Mich App 389; 451 NW2d 641 (1990), overruled by *People v Reichard*, 505 Mich 81 (2020) (the defendant and another inmate took several prison employees hostage). In *Cousins*, this Court upheld the defendant's conviction under MCL 750.349a, although on other grounds, where the defendant prisoner took the deputy as a hostage outside the prison grounds. *Cousins*, 139 Mich App at 589-593, 599.

the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

Verdicts are considered "inconsistent" when the verdicts "cannot rationally be reconciled." *People v Garcia*, 448 Mich 442, 464; 531 NW2d 683 (1995) (quotation marks and citation omitted). Inconsistent verdicts within a single jury trial are permissible, and do not require reversal absent a showing of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises. *Putman*, 309 Mich App at 251. The burden is on the defendant to prove evidence of one of these three things. *Id*. The defendant may not merely rely on the alleged inconsistency itself to support such an argument. *People v McKinley*, 168 Mich App 496, 510-511; 425 NW2d 460 (1988). "[J]uries are not held to any rules of logic nor are they required to explain their decisions." *Putman*, 309 Mich App at 251 (quotation marks and citation omitted).

Because juries may reach inconsistent verdicts, defendant is not entitled to relief. *Id*. Moreover, defendant does not even argue, let alone meet his burden of proof, that there was juror confusion, misunderstood instructions, or impermissible compromise. *Id*. Defendant merely relies on an alleged inconsistency, *McKinley*, 168 Mich App at 510-511, and defendant asks the Court to use the outdated standard that inconsistent verdicts cannot stand unless explained on a rational basis under *People v Goodchild*, 68 Mich App 226, 237; 242 NW2d 465 (1976). This is no longer the standard. See *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980). Therefore, because defendant has failed to meet his burden under the proper standard, he is not entitled to relief.

E. SENTENCING

For his final arguments, defendant argues that the trial court erred in its scoring of several offense variables (OVs) at sentencing. This Court reviews de novo the proper interpretation and application of the statutory guidelines. MCL 777.11 *et seq.*; *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

1. OV 2

Defendant argues that the trial court improperly scored OV 2 at five points because the jury acquitted him of armed robbery and felonious assault, and the court agreed that OV 1 should not be scored for aggravated use of a weapon, but still scored five points for OV 2 having found that defendant possessed the weapon.

OV 2 is scored for the "lethal potential of the weapon possessed or used." MCL 777.32(1). Five points are assessed if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon," and zero points are assessed if "[t]he offender possessed or used no weapon." MCL 777.32(1)(d), (f). Defendant argued that OV 2 should be scored at zero

points based on the reasoning employed by the trial court in scoring OV 1, i.e., that the jury did not find aggravated use of a weapon, and therefore scored zero points for OV 1.[8] The trial court, however, determined that a preponderance of the evidence proved that defendant possessed the box cutter, including testimony and the proximity of the box cutter to the vehicle, and so scored OV 2 at five points. This was not clearly erroneous.

Thornton testified that defendant grabbed the box cutter from the window sill in the back office, and kept gesturing at her holding the box cutter, saying that she had to come with him. The box cutter was found on the ground near the driver's side of the vehicle that defendant entered in the parking lot as the police approached. The box cutter was tested for DNA, and the sample on the box cutter matched defendant's DNA.[9] Therefore, the trial court properly determined that defendant possessed the box cutter by a preponderance of the evidence, and appropriately scored five points for OV 2. See *People v Bosca*, 310 Mich App 1, 50; 871 NW2d 307 (2015) (OV 2 properly scored at five points where associate of the defendant possessed a samurai sword and hatchet). It is of no import that the trial court scored OV 1 at zero points. OV 2 pertains to the "lethal potential of the weapon *possessed* or used," MCL 777.32(1) (emphasis added), whereas OV 1 addresses the "aggravated use of a weapon," MCL 777.31(1). While the jury may have acquitted defendant of armed robbery and felonious assault, thereby precluding scoring for such under OV 1, this did not preclude the jury from determining that defendant possessed the box cutter when he committed prisoner taking a hostage and kidnapping. Thus, OV 2 was properly scored at five points.

### 2. OV 10

With respect to OV 10, defendant argues that the trial court improperly scored five points because Thornton was not a vulnerable victim—she fought defendant for her cell phone and only stopped when he obtained the box cutter, not because of a difference in their size.

OV 10 is scored for the "exploitation of a vulnerable victim." MCL 777.40(1). Five points are assessed if "[t]he offender exploited a victim by his or her difference in size or strength, or both. . . ." MCL 777.40(1)(c). "The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). "Vulnerability" is

---

[8] OV 1 is scored for "aggravated use of a weapon." MCL 777.31(1). Defendant argued that OV 1 should be scored zero points because he was acquitted of armed robbery and felonious assault, and the prosecution argued that it should be scored five points because "[a] weapon was displayed or implied." MCL 777.31(1)(e). The trial court, relying on *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019) ("due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted."), determined that the jury did not find aggravated use of a weapon, and therefore scored zero points for OV 1. Defendant does not challenge the scoring of OV 1 on appeal.

[9] Defendant asserts that the blood on the knife was by mere transference that occurred when the police handled the evidence. Laninga testified that he could have transferred blood from one item to another when collecting the evidence, but he did not think there was any cross contamination in this case.

-11-

defined in the statute as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Defendant argued in his sentencing memorandum that OV 10 should not have been scored five points because there was not enough evidence at trial to conclude that defendant overpowered Thornton. The prosecution argued that OV 10 was properly scored five points because defendant kicked his way through the locked door to the back office, threw Thornton across the room, engaged in further physical contact, and defendant was muscular and more physically imposing than Thornton. At sentencing, the trial court determined that OV 10 was properly scored at five points because defendant broke through the door and physically accosted Thornton, and the difference in size and strength between defendant and Thornton were factors.

As recounted earlier, trial testimony indicates that defendant pushed or threw Thornton to the floor at least twice in the back office. Trooper Justin Clark testified that Thornton was "taller than an average lady;" however, Grenfell testified that upon seeing Thornton for the first time in the parking lot, one could tell that she was "not strong." When calculating sentencing guidelines, the trial court may consider all record evidence, including the Presentence Investigation Report (PSIR), plea admissions, and testimony. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may also consider victim-impact statements, and may make reasonable inferences from evidence in the record. *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). In Thornton's victim-impact statement in the PSIR, she stated, " 'I thought he was going to kill me. He had complete control of the situation and overpowered me. I was completely helpless and at his mercy.' " It was therefore reasonable for the trial court to infer that defendant took advantage of his difference in size and strength, and the trial court did not clearly err when it concluded that defendant exploited Thornton because she was a vulnerable victim. A score of five points for OV 10 was proper.

### 3. OV 12

Defendant argues that the trial court improperly assessed 10 points for OV 12 because the trial court counted breaking and entering with intent as a contemporaneous felonious act, but since he entered a motel that was open to the public, defendant argues there was no breaking, and OV 12 should have been scored at five points instead of 10.

OV 12 is scored for contemporaneous felonious criminal acts. MCL 777.42(1). Ten points are assessed for "three or more contemporaneous felonious criminal acts involving other crimes[.]" MCL 777.42(1)(c). Five points are assessed when "two contemporaneous felonious criminal acts involving other crimes were committed." MCL 777.42(1)(e). A felonious criminal act is contemporaneous if it occurred within 24 hours of the sentencing offense, and does not result in a separate conviction. MCL 777.42(2)(a)(*i*)-(*ii*). "[W]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behaviors that did not establish the sentencing offense." *People v Abbott*, 330 Mich App 648, 654-655; 950 NW2d 478 (2019) (quotation marks and citation omitted).

The prosecution asserted that defendant committed breaking and entering with intent under MCL 750.111, which provides that "[a]ny person who, without breaking, enters any . . . hotel . . . with intent to commit a felony or any larceny therein, is guilty of a felony." Defendant argues on appeal that because there was no breaking, there was no evidence to find the third

contemporaneous felonious criminal act. Defendant's argument is misplaced as he focuses on the element of breaking, when the statute clearly applies when a defendant enters certain buildings "without breaking." *Id*.

Moreover, even if a "breaking" was required, the evidence established that one occurred. "Under Michigan law, any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking," but "[t]here is no breaking if the defendant had the right to enter the building." *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998). In *Toole*, the defendant took a computer from a storage room located off of a classroom on a college campus. *Id*. at 657-658. This Court upheld his conviction of breaking and entering with intent to commit larceny on appeal. *Id*. at 656. The *Toole* Court provided:

> In the present case, the International Center was open to the public. Therefore, defendant had a right to enter the building. However, the storage room, which was unlocked, was posted "keep out," and access to the storage room was restricted to maintenance and security personnel. This Court has previously held that a breaking of an inner portion of a building constitutes the requisite element for burglary. *People v Clark*, 88 Mich App 88, 91; 276 NW2d 527 (1979). Therefore, because defendant was not lawfully permitted to enter the storage room, his opening the door from the classroom to the storage room was sufficient to satisfy the element of breaking. [*Toole*, 227 Mich App at 659.]

Defendant argues that the trial court should not have considered breaking and entering a building with intent to commit a felony as a contemporaneous felonious criminal act to be scored under OV 12 because he entered the motel, which was open to the public, and he had a right to enter. However, Thornton discovered defendant behind the front desk, and repeatedly told him that she could not help him unless he went back into the lobby and around to the other side of the front desk. When defendant finally went back to the lobby, a door closed and locked behind him. This area was clearly meant for motel employees only and not the general public. Thornton then ran to the back office, another area meant solely for employees, and made sure the door locked behind her. Defendant had to have traversed behind the front desk again to make his way to the locked door to the back office, which he kicked down. This satisfies the element of breaking. *Id*. Therefore, the trial court did not clearly err in determining that defendant committed breaking and entering with intent as a contemporaneous felonious criminal act for the purposes of OV 12, and properly assessed defendant 10 points.

### 4. OV 19

In his last scoring challenge, defendant argues that the trial court improperly scored 10 points for OV 19 because the escape and flight occurred before the commission of the other felonies, and defendant was apprehended immediately when police arrived.

OV 19 is scored for the "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49(1). Twenty-five points are assessed when the offender threatens the security of a penal institution or court, and 15 points are assessed when the offender "used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that

results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(1)(a), (b). Ten points are assessed if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(1)(c).

This Court recently explained that "[a] defendant interferes with the administration of justice by 'oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process.' " *People v Baskerville*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345403); slip op at 12; quoting *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense." *Baskerville*, ___ Mich App at ___; slip op at 12. "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *Id.* (quotation marks and citation omitted).

Here, the trial court properly considered defendant's conduct after completion of the sentencing offenses—kidnapping and prisoner taking a hostage. *Id.* Upon exiting the hotel, Thornton ran away from defendant, and defendant ran toward Thornton's car, for which he had the keys. Grenfell testified seeing defendant standing outside the vehicle, look at the police, and then proceed to get inside the vehicle, although it was very brief. The police gave defendant loud verbal commands to freeze, but he was still fumbling inside the vehicle as if trying to get it to start as the police surrounded him. This demonstrates defendant's attempt to avoid getting caught. *Id.* Thus, the trial court properly assessed defendant 10 points for OV 19. Because defendant was unsuccessful in all of his challenges on appeal to the OV scoring, he is not entitled to a remand for resentencing. *Francisco*, 474 Mich at 89 n 8 ("Where a scoring error does not alter the appropriate guidelines, resentencing is not required.").[10]

Affirmed.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

---

[10] "Resentencing is also not required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range." *Francisco*, 474 Mich at 89 n 8. The trial court stated at sentencing that if the sentencing guidelines range were decreased based on a successful challenge by defendant to the OV scoring, the trial court would have imposed the same sentence, which still would have fallen within the decreased range.