*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS J. LYNN,

        Defendant-Appellant.

UNPUBLISHED
October 19, 2023

No. 363458
Wayne Circuit Court
LC No. 19-005415-01-FC

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carrying a concealed weapon (CCW), MCL 750.227; assault with a dangerous weapon (felonious assault), MCL 750.82; and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84.[1] Defendant was sentenced to 40 months to 5 years' imprisonment for the CCW conviction, 2 ½ to 4 years' imprisonment for the felonious assault conviction, and 6 to 10 years' imprisonment for the AWIGBH conviction. We affirm.

## I. FACTS

This case arises from an incident at a gas station between defendant and Leonard Scott (Scott). Scott walked into the gas station store and stood in line behind defendant, whom he identified in the courtroom, and walked up to the clerk window after defendant stepped away. According to Scott, defendant became vocally belligerent toward him and put his "dukes up," so Scott put his "dukes up" in response. Scott saw defendant pull from behind his back what he described as a "hunting knife." He testified about being frightened.

Scott threw a pop can at defendant and ran down a store aisle. Scott testified that while being chased, he heard defendant say: "I swear on my mother Imma kill you." Scott ran to the

---

[1] Defendant was charged with assault with intent to murder (AWIM), MCL 750.83, but the jury convicted him of the lesser included offense of AWIGBH.

door with defendant right behind and tried to pull the door closed. Defendant caught up to Scott at one of the gas station pumps and, according to Scott, began stabbing him in the top of the head with the hunting knife. When Scott was able to get away from defendant, he walked home. A bicyclist saw him bleeding and called emergency medical services (EMS), which took him to the hospital where he received four staples in his head.

On cross-examination, defense counsel pressed Scott regarding whether he actually saw the knife in defendant's hand during the altercation outside near the gas pump, in response to which Scott testified he did not see anything in defendant's hand, but he saw the knife go up and come down into his head. He further stated: "I—at first I saw him coming with a knife and then I felt my head being struck. And then after that, I tried to shield myself so I really wasn't looking for the knife after that." Defense counsel confronted Scott with his statement at the preliminary examination (PE) that while outside, he never saw the knife in defendant's hand. Scott said he did not remember making that statement, but he must have if the transcript said he did. Further, defense counsel elicited some confusion regarding Scott's hospital visit on the day of the incident. When defense counsel asked if he did not in fact receive staples that day, Scott stated he may not have, but he received them at some point because he remembered having the staples removed.

The trial court admitted into evidence surveillance videos from inside the gas station store, and outside at the gas pumps. In the videos, events transpired as described in the store. In the video showing outside the store, Scott is seen running to the gas pumps with defendant close behind. While it is difficult to tell whether defendant is still holding the knife, defendant can be seen striking and kicking Scott. When Scott goes to the ground, defendant strikes down on his head, with some force. Eventually, defendant backs off and leaves the view of the camera. After defendant walks back into the view of the camera in what looks to be an attempt to further intimidate Scott, Scott runs away and defendant walks off in the other direction.

Detroit Police Department (DPD) Officer Keith Astrauckas was dispatched to the scene and observed a blood stain on one of the gas pumps. Officer Astrauckas saw wounds on Scott's head. DPD Officer Daniel Sharkey arrived at the gas station and began canvassing the area for a potential stabbing suspect. He came across defendant who was walking in the vicinity, and located a knife on his person, which the court admitted into evidence.

The trial court denied defendant's motion for a directed verdict. The court orally instructed the jury regarding the elements necessary for conviction of AWIM and the lesser charge of AWIGBH, as well as felonious assault, but provided no oral instruction on the CCW charge.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that insufficient evidence existed for his felonious assault conviction, asserting there was insufficient evidence defendant attacked Scott with a knife. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Smith*, 336 Mich App 297, 302-303; 970 NW2d 450 (2021). " 'We review the evidence in the light most favorable to the prosecution and determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt.' " *Id*. at 303, quoting *People v Savage*, 327

Mich App 604, 613; 935 NW2d 69 (2019). The standard of review is deferential. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). In other words:

> [A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*Id*. (quotation marks and citations omitted).]

"To perpetrate a felonious assault, a defendant must commit '(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.' " *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). See also MCL 750.82(1) ("Except as provided in subsection (2), a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . ."). "A defendant commits an assault when he or she takes some 'unlawful act that places another in reasonable apprehension of receiving an immediate battery.' " *Nix*, 301 Mich App at 205, quoting *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "Battery has been defined as an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Starks*, 473 Mich at 234 (quotation marks and citations omitted).

Sufficient evidence existed to establish defendant committed assault, and did so using a dangerous weapon. Defendant focuses on the portion of the incident which occurred outside at the gas pump, asserting that Scott's injuries were inconsistent with a stabbing, especially considering the ferocity of the blows inflicted, and highlighting the lack of medical evidence establishing knife wounds. While defendant is correct that the prosecution did not introduce medical evidence of Scott's injuries, a review of the surveillance video of the gas pumps confirms the force with which defendant assaulted Scott and, viewing the evidence in a light most favorable to the prosecution, a reasonable juror could find that defendant used a knife in the attack. Although the surveillance video taken outside is not clear as to whether defendant used a knife to hit or stab Scott, surveillance video from inside the gas station store confirms defendant's possession, and display of a knife. And Scott testified that defendant stabbed him with that knife when the two were outside by the gas pump. On cross-examination, Scott testified that he saw defendant coming outside with a knife and then felt his head being struck. He was trying to shield himself so he was not looking for the knife in defendant's hand. It is the province of the jury, not this Court, to "determine the credibility of a witness or the weight to be afforded any evidence . . . ." *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020).

Despite confusion regarding where and when Scott received medical attention for his injuries, Scott testified he received staples in his head as a result of the assault, and Officer Astrauckas observed wounds on Scott's head. Further, Officer Sharkey recovered a knife on defendant's person when he was searching the area near the gas station. From this evidence, a

reasonable jury could find defendant stabbed and assaulted Scott, with a knife. See *Nix*, 301 Mich App at 205.

Moreover, even assuming the prosecution failed to present sufficient evidence defendant stabbed Scott with a knife outside, sufficient evidence existed that defendant feloniously assaulted Scott *inside* the gas station store. Surveillance video shows defendant draw a knife and display it toward Scott in a threatening manner. Scott testified that defendant would say every now and then "I swear on my mother Imma kill you," and that he was frightened and worried defendant would charge at him with the knife. On appeal, defendant asserts Scott testified on cross-examination he did not see the knife in the gas station store, but a review of the transcript reveals the inaccuracy of that assertion. From this evidence, a reasonable jury could infer defendant assaulted Scott with the intent to place Scott in reasonable apprehension of an immediate battery. See *Nix*, 301 Mich App at 205; see also *People v Terry*, 217 Mich App 660, 662-663; 553 NW2d 23 (1996) (actual injury not required).

## B. INCONSISTENT VERDICTS

Defendant next argues the Court should set aside his felonious assault conviction because it is inconsistent with his conviction of AWIGBH. He asserts AWIGBH requires the intent to do great bodily harm less than murder, while, under MCL 750.82, felonious assault specifically requires the lack of intent to do great bodily harm. Defendant's argument fails.

We review de novo questions regarding inconsistent verdicts. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012). The elements of AWIGBH are: " '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.' " *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016), quoting *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). Again, to prove felonious assault, the prosecution must demonstrate defendant committed: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *Nix*, 301 Mich App at 205 (quotation marks and citation omitted). However, the felonious assault statute specifically states, in pertinent part: "[A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon *without intending to commit murder or to inflict great bodily harm less than murder* is guilty of a felony." MCL 750.82(1) (emphasis added).

Defendant relies on this language in MCL 750.82(1), and this Court's decision in *People v McKewen*, 326 Mich App 342; 926 NW2d 888 (2018), to support his argument. In *McKewen*, this Court held the defendant's convictions of both felonious assault and AWIGBH arising from a single assault were inconsistent, stating:

> In *People v Davis*, 320 Mich App 484, 494-496; 905 NW2d 482 (2017) [vacated in relevant part 503 Mich 984 (2019)], we held that in a case involving a single assault, a judgment of conviction for both AWIGBH and aggravated domestic assault is inconsistent because the crimes are mutually exclusive. As we stated in *Davis*:
>
>> Clearly, these two offenses are mutually exclusive from a legislative standpoint. One requires the defendant to act with the specific intent to do great bodily harm less than murder; the other is committed

-4-

without intent to do great bodily harm less than murder. We must give effect to the plain and unambiguous language selected by the Legislature. And the plain language of the statutes reveals that a defendant cannot violate both statutes with one act as he or she cannot both intend and yet *not* intend to do great bodily harm less than murder. [*Davis*, 320 Mich App at 490 (citations omitted).]

> In this case, the trial court did not instruct the jury "regarding the lack of intent to do great bodily harm necessary to meet the statutory definition of [felonious assault]" because it is a "negative element" that need not be found by a jury. However, the trial court specifically instructed the jury that in order to convict defendant of AWIGBH, it had to find that he "intended to do great bodily harm." By convicting defendant on that charge, they made a finding—one we may not disturb—that defendant acted with the intent to do great bodily harm. [*McKewen*, 326 Mich App at 352-353 (footnote and citation omitted).]

However, the Michigan Supreme Court subsequently vacated the portion of this Court's *Davis* decision on which the *McKewen* Court relied, and remanded the case. *People v Davis*, 503 Mich 984; 923 NW2d 891 (2019). In so doing, our Supreme Court determined this Court erred when it vacated the defendant's conviction of aggravated domestic assault on the basis that it was inconsistent with his conviction of AWIGBH, reasoning:

> Regardless of whether this state's jurisprudence recognizes the principle of mutually exclusive verdicts, this case does not present that issue. In this case, the jury was instructed that to convict defendant of AWIGBH, it must find that defendant acted "with intent to do great bodily harm, less than the crime of murder." See MCL 750.84(1)(a). However, with respect to aggravated domestic assault, the jury was *not* instructed that it must find that defendant acted *without* the intent to inflict great bodily harm. See MCL 750.81a(3); *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979) ("While the absence of malice is fundamental to manslaughter in a general definitional sense, it is not an actual element of the crime itself which the people must establish beyond a reasonable doubt."). Since, with respect to the aggravated domestic assault conviction, the jury never found that defendant acted without the intent to inflict great bodily harm, a guilty verdict for that offense was not mutually exclusive to defendant's guilty verdict for AWIGBH, where the jury affirmatively found that defendant acted with intent to do great bodily harm. [*Davis*, 923 NW2d at 892.]

Similarly, in this case, the trial court instructed the jury that the offense of AWIGBH required a finding that defendant intended to cause great bodily harm, but did not instruct the jury that felonious assault required action *without* the intent to do great bodily harm. Instead, the court instructed that to prove the charge, the prosecution needed to establish defendant "intended either to injure Leonard Scott or make Leonard Scott reasonably fear an immediate battery." Therefore, here, just as in *Davis*, 923 NW2d at 892, defendant's convictions of AWIGBH and felonious assault are not inconsistent.

However, we need not even apply the *Davis* analysis to make the same determination. In contrast to *McKewen* and *Davis*, defendant committed two acts of assault—the first inside the gas station store, and the second outside at the gas pumps—as stated by the trial court when it rejected defense counsel's argument that felonious assault should have been an alternative charge to AWIM. Accordingly, the jury could have convicted defendant of felonious assault for his actions inside the gas station store, and AWIGBH for his actions outside at the gas pumps.

## C. SENTENCING ERROR–OV 1

Defendant argues that the trial court erred by assessing 25 points for OV 1 because the evidence does not establish that he assaulted Scott with a knife. We disagree.

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v Haynes*, 338 Mich App 392, 435; 980 NW2d 66 (2021) (quotation marks and citation omitted). While a jury must find facts supporting the elements of a crime beyond a reasonable doubt, a sentencing court's factual determinations need only be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court assessed 25 points for OV 1. A court should assess 25 points for OV 1 if "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon[.]" MCL 777.31(1)(a); *People v Hutcheson*, 308 Mich App 10, 13-14; 865 NW2d 44 (2014).

As discussed earlier, the prosecution introduced sufficient evidence that defendant stabbed Scott with a knife during the assault outside near the gas pumps. Scott testified defendant stabbed him and he received four staples in his head as a result of his injuries. While it was difficult to see if defendant was holding and utilizing the knife in the surveillance video depicting the assault outside near the gas pumps, the video from inside the gas station store shows defendant wielding a knife. And Officer Sharkey found a knife on defendant's person after the incident. Further, Officer Astrauckas testified that he saw wounds on Scott's head when he spoke with Scott at his home after the incident. Accordingly, the trial court properly assessed 25 points for OV 1.

## D. INSTRUCTIONAL ERROR AND INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. INSTRUCTIONAL ERROR

Finally, defendant argues that he was denied a fair trial, and his CCW conviction should be vacated, because the trial court failed to orally instruct the jury regarding the elements necessary to prove CCW. In the alternative, defendant asserts that his trial counsel was ineffective for waiving any objection to the jury instructions, as given. We affirm defendant's conviction of CCW.

A defendant reserves a claim of instructional error by challenging that "aspect of the jury instructions in the trial court." *People v Czuprynski*, 325 Mich App 449, 466; 926 NW2d 282 (2018). Defendant did not challenge below the trial court's failure to orally instruct the jury

regarding the elements of CCW. In fact, defense counsel expressed satisfaction with the trial court's instructions. Accordingly, this issue has not been preserved for appellate review.

Generally, unpreserved claims of instructional error are reviewed for plain error affecting substantial rights. *People v Spaulding*, 332 Mich App 638, 652-653; 957 NW2d 843 (2020), citing *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020) (quotation marks and citation omitted; alteration in original).]

However, structural constitutional error requires automatic reversal. *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000).

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). " 'A court must properly instruct the jury so that [the jury] may correctly and intelligently decide the case.' " *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) *(Traver II)*, quoting *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996) (opinion by MALLET, J.). "The instruction to the jury must include all elements of the crime charged, and must not exclude from the jury consideration material issues, defenses or theories if there is evidence to support them." *Traver II*, 502 Mich at 31 (quotation marks and citation omitted).

After closing arguments, the trial court began its instructions to the jury. Although it provided oral instructions regarding the elements necessary to prove AWIM, AWIGBH, and felonious assault, the trial court failed to orally provide the elements necessary to prove CCW, before excusing the jury for deliberation. Ultimately, the jury convicted defendant of AWIGBH, felonious assault, and CCW.

In *People v Duncan*, 462 Mich 47, 48; 610 NW2d 551 (2000), the Michigan Supreme Court held, "It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt." However, in *Traver II*, our Supreme Court considered a situation in which the trial court failed to orally instruct the jury regarding the elements of the charges, but did provide the jury written instructions. *Traver II*, 502 Mich at 28-30. Ultimately, it examined MCR 2.512 and MCR 2.513, and read them to "*require* that jury instructions be provided orally," *id*. at 43, but determined the defendant had waived his claim of instructional error. *Id*. at 34-43. Accordingly, our Supreme Court affirmed the judgment of this Court to the extent it held oral jury instructions are required, but reversed to

the extent it held the instructional error required reversal, and remanded for this Court to review the defendant's associated ineffective assistance of counsel claim. *Id*. at 43. See also *People v Traver*, 316 Mich App 588, 598-600; 894 NW2d 89 (2016) *(Traver I)*, aff'd in part, rev'd in part by *Traver II*, 502 Mich 23 (2018).

MCR 2.512 states, in relevant part:

(B) Instructing the Jury.

(1) At any time during the trial, the court may, with or without request, instruct the jury on a point of law if the instruction will materially aid the jury in understanding the proceedings and arriving at a just verdict.

(2) Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests as provided in subrule (A)(2), that party's theory of the case.

MCR 2.513, amended after our Supreme Court's decision in *Traver II* and applicable to this case, now states, in pertinent part:

(N) Final Instructions to the Jury.

(1) Before closing arguments, the court must give the parties a reasonable opportunity to submit written requests for jury instructions. Each party must serve a copy of the written requests on all other parties. The court must inform the parties of its proposed action on the requests before their closing arguments. After closing arguments are made or waived, the court must orally instruct the jury as required and appropriate, but at the discretion of the court, and on notice to the parties, the court may orally instruct the jury before the parties make closing arguments. After jury deliberations begin, the court may give additional instructions that are appropriate.

(2) *Solicit Questions about Final Instructions*. As part of the final jury instructions, the court shall advise the jury that it may submit in a sealed envelope given to the bailiff any written questions about the jury instructions that arise during deliberations. After orally delivering the final jury instructions, the court shall invite the jurors to ask any questions in order to clarify the instructions before they retire to deliberate.

If questions arise, the court and the parties shall convene, in the courtroom or by other agreed-upon means. The question shall be read into the record, and the attorneys shall offer comments on an appropriate response. The court may, in its discretion, provide the jury with a specific response to the jury's question, but the court shall respond to all questions asked, even if the response consists of a directive for the jury to continue its deliberations.

(3) *Copies of Final Instructions*. The court shall provide a written copy of the final jury instructions to take into the jury room for deliberation. Upon request by any juror, the court may provide additional copies as necessary. The court, in its discretion, also may provide the jury with a copy of electronically recorded instructions.

(4) *Clarifying or Amplifying Final Instructions*. When it appears that a deliberating jury has reached an impasse, or is otherwise in need of assistance, the court may invite the jurors to list the issues that divide or confuse them in the event that the judge can be of assistance in clarifying or amplifying the final instructions.

It is clear from the record that the trial court failed to orally instruct the jury regarding the elements necessary to prove CCW, after closing arguments, or solicit any questions from the jury regarding those instructions. Nevertheless, like the defendant in *Traver II*, defendant here waived his claim of instructional error. As stated by the Michigan Supreme Court in *Kowalski*, 489 Mich at 503:

[A] jury instruction that improperly omits an element of a crime amounts to a constitutional error. However, because defense counsel here explicitly and repeatedly approved the instruction, defendant has waived the error. This Court has defined "waiver" as "the intentional relinquishment or abandonment of a known right." "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver. [(Citations omitted). See also *Traver II*, 502 Mich at 40-41.]

The trial court read its instructions to the jury, and released the jury for deliberation. Outside the presence of the jury, the court asked counsel if they were satisfied with the instructions and form of the verdict, to which both responded yes. Thus, counsel for both parties approved and expressed satisfaction with the instructions, as given, thereby waiving any challenge on appeal. Defendant admits as much in his brief on appeal, stating: "No objection was made. In fact defense counsel voiced no objection to the final oral instructions as given."

2. INEFFECTIVE ASSISTANCE OF COUNSEL

We must then turn to defendant's ineffective assistance of counsel claim. First, defendant abandoned the claim by failing to meaningfully argue the merits, or include it in his statement of the issues presented. He states only at the end of his claim of instructional error, "In the alternative Mr. Lynn claims ineffective assistance of counsel under Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984) due to his counsel's waiver of any objections to the instructions as given."

"The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v*

*McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). And "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Further, "[t]o the extent that these statements might be interpreted as additional claims of error, defendant has abandoned them by failing to identify them in his statement of the questions presented . . . ." *People v Haynes*, 338 Mich App 392, 435 n 5; 980 NW2d 66 (2021).

Regardless, defendant's ineffective assistance of counsel claim fails. To preserve a claim of ineffective assistance of counsel, a defendant must move in the trial court for a new trial or evidentiary hearing. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not do so, and has therefore failed to preserve this issue for appellate review.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id*. However, when a defendant has failed to seek a new trial or *Ginther*[2] hearing, "this Court's review is . . . limited to errors apparent on the record." *Haynes*, 338 Mich App at 429.

To evaluate a claim for ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57 (1999), citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). To prevail on a claim of ineffective assistance of counsel, a defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Counsel is presumed effective. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "[T]his Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

The lower court record shows that the trial court provided the jury with written instructions regarding the elements of each crime charged, including CCW. In its preliminary instructions to the jury, the trial court read the elements necessary to prove CCW.[3] During closing argument, the prosecutor discussed the elements necessary to prove CCW, stating: "Complete invisibility is not required. The Judge is going to instruct you on this." And while instructing the jury, the trial court stated, "When you go to the jury room you will be provided a written copy of the final instructions." It further stated: "Again, you will have a written copy of these instructions. Think about all of my instructions together as the law you are to follow. These instructions—the written instructions will be accompanied by a verdict form." Assuming counsel for both parties participated in compiling the written instructions, from the foregoing, it appears that the jury

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Orally providing the elements in the preliminary instructions does not cure any error in failing to read them at the close of trial. See *Duncan*, 462 Mich at 50 n 8.

received a written copy of the jury instructions which included the elements necessary to prove CCW. This conclusion is supported by a review of the lower court record, which includes various loose written instructions, presumably those approved by the parties and provided to the jury, including M Crim JI 11.2, which defendant cites as the appropriate instruction for the elements of CCW. Again, this Court "must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *Kowalski*, 489 Mich at 501. Finally, defendant focuses entirely on the trial court's failure to provide *oral* instruction on the elements of CCW. He does not assert that the jury additionally lacked written instructions. Accordingly, although the trial court erred by failing to orally instruct the jury regarding the elements necessary for a conviction of CCW, but did provide written instructions regarding the elements of that charge, on the record before us, we conclude that defendant suffered no prejudicial error. Therefore, his claim of ineffective assistance of counsel lacks merit.[4]

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel

---

[4] This is the same conclusion reached by this Court on remand in *People v Traver (On Remand)*, 328 Mich App 418, 423; 937 NW2d 398 (2019) (*Traver III*). Specifically, this Court adopted the analysis in Judge Sawyer's dissent in *Traver I*, which rejected the defendant's claim of ineffective assistance of counsel, as it related to his claims of instructional error. *Traver I*, 316 Mich App at 608-609 (SAWYER, J., dissenting).